UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**  'O'

| Case No. | 2:17-cr-00047-CAS - 1 | Date | August 7, 2017 |
|---|---|---|---|
| Present: The Honorable | CHRISTINA A. SNYDER | | |
| Interpreter | N/A | | |

| Catherine Jeang | Laura Elias | Alexander Wyman<br>Reema El_Amamy |
|---|---|---|
| *Deputy Clerk* | *Court Reporter/Recorder,<br>Tape No.* | *Assistant U.S. Attorney* |

| U.S.A. v. Defendant(s): | Present | Cust. | Bond | Attorneys for Defendants: | Present | App. | Ret. |
|---|---|---|---|---|---|---|---|
| GASTON BROWN | X | X | | JAN HANDZLIK<br>EVAN JENNESS | X<br>X | | X<br>X |

**Proceedings:** DEFENDANT'S MOTION FOR DISCOVERY (Dkt. 30, filed May 30, 2017)

DEFENDANT'S MOTION EXCLUDE PROPOSED EXPERT TESTIMONY (Dkt. 31, filed May 30, 2017)

DEFENDANT'S MOTION TO SUPPRESS HISTORICAL CELL SITE LOCATION INFORMATION (Dkt. 41, filed June 19, 2017)

GOVERNMENT'S MOTION FOR ORDER AUTHORIZING THE TAKING OF DNA SAMPLES (Dkt. 43, filed June 21, 2017)

## I. INTRODUCTION & BACKGROUND

On January 26, 2017, a federal grand jury indicted defendant Gaston Brown with one count of conspiracy to possess with intent to distribute and to distribute cocaine and one count of possession with intent to distribute cocaine. Dkt. 1. The government alleges that defendant conspired with Marsha Gay Reynolds, a flight attendant, to transport cocaine from Los Angeles International Airport to John F. Kennedy International Airport in New York. See generally id. Defendant first appeared before this Court on March 16, 2017. Dkt. 10. Trial is set to begin on November 28, 2017. See dkt. 28.

On May 30, 2017, defendant filed a motion for discovery, seeking a Court order to compel the government to produce all discovery materials that defendant has requested. Dkt.

30 ("Discovery Mot."). The government filed its opposition on June 26, 2017, dkt. 47 ("Discovery Opp'n"), and defendant filed his reply on July 5, 2017, dkt. 53 ("Discovery Reply").

Also on May 30, 2017, defendant filed a motion to exclude the expert testimony of Drug Enforcement Administration ("DEA") Special Agent Steve Paris. Dkt. 31 ("Expert Mot."). The government filed its opposition on June 19, 2017, dkt. 41 ("Expert Opp'n"), and defendant filed his reply on July 10, 2017, dkt. 58 ("Expert Reply").

On June 19, 2017, defendant filed a motion to suppress historical cell site location information ("CSLI") obtained by the government, and its tainted fruits, and to preclude the expert testimony of Federal Bureau of Investigation ("FBI") Special Agent Nicole Black relating to the use of CSLI. Dkt. 41 ("CSLI Mot."). The government filed its opposition on July 3, 2017, dkt. 49 ("CSLI Opp'n"), and defendant filed his reply on July 10, 2017, dkt. 59 ("CSLI Reply").

On June 21, 2017, the government filed a motion for an order authorizing the taking of DNA samples from defendant. Dkt. 43 ("DNA Mot."). Defendant filed his opposition to the government's motion on July 3, 2017, dkt. 50 ("DNA Opp'n"), and the government filed its reply on July 10, 2017, dkt. 57 ("DNA Reply").

The Court held oral argument on August 7, 2017. Having carefully considered the parties' arguments, the Court finds and concludes as follows.

## II. DISCOVERY

On March 24, 2017, defendant made a number of discovery requests on the government. Dkt. 30, Ex. A. On March 30, 2017, the government sought a protective order so that sensitive discovery material could be produced to defendant. Dkt. 21. On March 31, 2017, the Court granted the government's request. Dkt. 22. The government then began producing PDFs of the discovery material by email and disc, without Bates numbering. Discovery Mot. at 3; Discovery Opp'n at 2.

Defendant argues that discovery is incomplete because certain materials were visibly absent from the government's initial production. Discovery Mot. at 3. In particular, defendant seeks five categories of materials: (1) information bearing on Reynolds's credibility and evidence of what the government did to investigate assertions by Reynolds that implicate someone other than defendant in the offenses alleged; (2) all unedited videos and other images related to this case; (3) investigators' handwritten notes of witness interviews; (4) the prior testimony of the government's expert witnesses; and (5) the grand jury transcripts, which may be disclosed pursuant to prior Court order. Id. at 4–9.

In its opposition, the government contends that all discovery previously produced to defendant has been reproduced with Bates numbering and that the government has provided additional materials responsive to defendant's requests. Discovery Opp'n at 2. The government states that it is continuing to obtain and produce materials that are responsive to defendant's requests and that it intends to produce additional material on or before July 17, 2017. Id. at 3. Pursuant to the parties' agreement during oral argument, the Court orders the parties to meet and confer on or before September 5, 2017 regarding discovery. The Court reserves ruling on any specific discovery requests that defendant may still have after the parties meet and confer. Furthermore, the government represented at oral argument that it would provide to defendant transcripts of DEA Special Agent Paris's prior testimony—to the extent such transcripts are already available—along with the cases in which Paris has previously testified. The Court directs the government to do so on or before September 5, 2017.

## III. EXPERT TESTIMONY

Defendant seeks to exclude Paris's expert opinion. Expert Mot. at 3. Paris is expected to testify regarding:

> (1) the mechanics of cocaine distribution; (2) how Los Angeles is a distribution hub for cocaine; (3) how cocaine is cheaper on the West Coast of the United States as compared to the East Coast; (4) the role of couriers in drug-trafficking organizations; (5) and the price of a kilogram of cocaine on the West Coast versus the East Coast in March 2016.

Dkt. 31, Ex. A ("Expert Disclosures"). Defendant contends that such testimony constitutes *modus operandi* testimony that will serve as advocacy rather than expertise. Expert Mot. at 3. Defendant argues that Paris's testimony will be highly prejudicial and will not aid the jury in understanding the evidence. Id. at 3–4. If the Court is inclined to admit Paris's testimony, defendant requests that the Court conduct a Daubert hearing. Id. at 7.

Law enforcement agents may offer expert testimony regarding the value of seized drugs. United States v. Alatorre, 222 F.3d 1098, 1104 (9th Cir. 2000); United States v. Campos, 217 F.3d 707, 718 (9th Cir. 2000) (concluding that the jury properly heard the agent's expert testimony regarding the street value of marijuana); United States v. Golden, 532 F.2d 1244, 1247 (9th Cir. 1976) (concluding that the trial court did not abuse its discretion in permitting a DEA special agent to testify as an expert regarding the market price of heroin). The value of the seized cocaine is "relevant to [defendant's] knowledge of the presence of the [cocaine] and intent to distribute." Golden, 532 F.2d at 1247. Accordingly, the Court finds that Paris's testimony regarding the price of cocaine on the East and West Coasts generally and in March 2016 specifically is relevant and its probative value is not substantially outweighed by a danger

of unfair prejudice. See Fed. R. Evid. 402, 403. The Court therefore **DENIES** defendant's motion to exclude Paris's testimony regarding the price of cocaine on the East and West Coasts.

In some circumstances, the Ninth Circuit has held law enforcement officers may offer expert opinion testimony as to the common practices of drug dealers. See, e.g., United States v. Espinosa, 827 F.2d 604, 612 (9th Cir. 1987) ("In a series of cases, we have upheld admission of a law enforcement officer's expert testimony that the defendant's activities indicated that he acted in accordance with usual criminal modus operandi.") (collecting cases, each one involving drug trafficking); United States v. Gutierrez-Castro, 341 F. App'x 299, 301 (9th Cir. 2009) ("[A]llowing DEA Agent Jeffrey Butler to testify about drug trafficking practices as an expert was not an abuse of the district court's 'broad discretion' in discharging its gatekeeping function by assessing the relevance and reliability of expert testimony. . . . We have consistently allowed government agents or similar persons to testify as to the general practices of criminals to establish the defendants' modus operandi." (quotation marks omitted)); United States v. Ijemba, 988 F.2d 124 (9th Cir. 1993) (concluding that the trial court properly admitted expert testimony on the typical structure and modus operandi of Nigerian heroin trafficking organizations). Furthermore, and contrary to defendant's suggestion, the Ninth Circuit has expressly held that "[g]overnment agents . . . *may* testify as to the general practices of criminals to establish the defendants' modus operandi." Campos, 217 F.3d at 718 (emphasis added).

However, in United States v. Vallejo, 237 F.3d 1008 (9th Cir.), opinion amended on denial of reh'g, 246 F.3d 1150 (9th Cir. 2001), the Ninth Circuit held "that expert testimony regarding the general structure and operations of drug trafficking organizations is inadmissible where the defendant is not charged with a conspiracy to import drugs or where such evidence is not otherwise probative of a matter properly before the court." Id. at 1012; see United States v. McGowan, 274 F.3d 1251 (9th Cir. 2001) (same). The Vallejo court found that the district court had erred in admitting expert testimony concerning the structure of drug trafficking organizations because the government never articulated how testimony on the modus operandi of drug trafficking organizations was relevant to Vallejo in particular. 237 F.3d at 1015–17. The government had "portrayed [Vallejo] as a member of an enormous international drug trafficking organization" even though Vallejo "was not alleged to be associated with a drug trafficking organization in even the most minor way." Id. at 1017. The Ninth Circuit has since clarified, however, that "Vallejo expressly approved admissibility of modus operandi testimony[,]" United States v. Valencia-Amezcua, 278 F.3d 901, 909 (9th Cir. 2002), and "[n]either Vallejo nor its progeny supports the establishment of a per se rule that expert testimony regarding the operation and structure of drug trafficking organizations or the modus operandi of couriers involved in drug trafficking organizations is inadmissible[,]" United States v. Sepulveda-Barraza, 645 F.3d 1066, 1070 (9th Cir. 2011). Rather, courts "must independently determine whether the expert testimony is relevant and probative on a case-by-case basis." Sepulveda-Barraza, 645 F.3d at 1071.

Defendant is not charged with conspiracy to import drugs.  In addition, the Court cannot conclude, at this time, that Paris's testimony on the mechanics of cocaine distribution and the role of couriers in drug-trafficking organizations is "otherwise probative of a matter properly before the court."  Vallejo, 237 F.3d at 1012.  As a result, the Court **GRANTS** defendant's motion to exclude Paris's testimony on the mechanics of cocaine distribution and the role of couriers in drug-trafficking organizations, subject to reconsideration if the government demonstrates that such testimony relates to defendant in particular.  By contrast, the Court finds that Los Angeles's purported role as a distribution hub for cocaine does not fall within the confines of Vallejo and its progeny.  Accordingly, the Court finds that such testimony is relevant and its probative value is not substantially outweighed by a danger of unfair prejudice.  See Fed. R. Evid. 402, 403.  The Court therefore **DENIES** defendant's motion to exclude Paris's expected testimony about Los Angeles.

Finally, the Court finds that there is no need for a Daubert hearing to determine the admissibility of Paris's testimony.  Federal Rule of Evidence 702 allows an expert to testify "in the form of an opinion or otherwise if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.  Daubert v Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993), addressed the standard for admitting expert scientific testimony and made clear that the Federal Rules of Evidence impose a "gatekeeping" duty on the district court, requiring the court to "screen[ ]" the proffered evidence to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable."  Id. at 589.  Daubert's "general holding—setting forth the trial judge's general 'gatekeeping' obligation—applies not only to testimony based on 'scientific' knowledge, but also to testimony based on 'technical' and 'other specialized' knowledge."  Kumho Tire Co. Ltd. v. Carmichael, 526 U.S. 137, 141 (1999).  However, a Daubert hearing is not necessary before admitting law enforcement officer's expert testimony.  See United States v. Alatorre, 222 F.3d 1098, 1105 (9th Cir. 2000) (concluding that a pretrial hearing was not required before the admission of an officer's testimony about, inter alia, the value of marijuana, and distributable quantity); United States v. Hankey, 203 F.3d 1160, 1164, 1169 (9th Cir. 2000) (recognizing that "[t]he Daubert factors were not intended to be exhaustive nor to apply in every case" and holding that the district court properly discharged its gatekeeping function in admitting a police gang expert's testimony about gangs' "code of silence.").  The Court makes a preliminary finding that Paris's proposed testimony will be

reliable, subject to the presentation of the Paris's qualifications and experience and defendant's voir dire of the witness. Paris has been employed by the DEA for approximately 20 years; he has received over 1,000 hours of formal training in the field of narcotics investigation; he has participated in over 1,000 investigations and over 1,300 arrests; in addition to his investigative duties, he has held a number of supervisory and instructional roles at the DEA. See Expert Disclosures. Defendant will have "an opportunity—during voir dire, at trial—to explore the relevance and reliability of the proposed testimony," and "if voir dire turn[s] up any issues, further questioning, outside the jury's presence, [will] be in order." See Alatorre, 222 F.3d at 1105. The Court thus "fulfill[s] its duty to make a determination as to the reliability of the expert's testimony" and need not hold a Daubert hearing before trial.

## IV. HISTORICAL CSLI

On March 8, 2017, the government filed an ex parte application for an order authorizing AT&T to disclose to the government the historical CSLI for two cell phone numbers that the FBI believed were used by defendant and Reynolds to further their conspiracy. Dkt. 41, Ex. B ("CSLI Application and Order"). The government sought such an order pursuant to the Stored Communications Act ("SCA"), which authorizes a court to compel, inter alia, an electronic communications service to disclose the records of its customers "if the governmental entity offers specific and articulable facts showing that there are reasonable grounds to believe that the contents of a wire or electronic communication, or the records or other information sought, are relevant and material to an ongoing criminal investigation." 18 U.S.C. 2703(d). On March 8, 2017, the Court granted the government's request and issued a 2703(d) order authorizing AT&T to disclose to the government the historical CSLI for the subject telephones. See CSLI Application and Order.

At trial, the government is expected to elicit testimony from Special Agent Black regarding: (1) the operation of cellular networks; (2) how historical cell site data was used to determine the general location of defendant's phone; and (3) the creation of maps indicating the location of certain cell towers used by defendants phone. Dkt. 41, Ex. A. Defendant seeks to suppress the CSLI evidence, its tainted fruits, and Black's testimony because the government obtained defendant's CSLI without a warrant based on probable cause, in violation of the Fourth Amendment. CSLI Mot. at 9.

Neither the Ninth Circuit nor the Supreme Court has yet adjudicated the question of whether the warrantless seizure and search of CSLI violates the Fourth Amendment. On June 5, 2017, the Supreme Court granted certiorari in Carpenter v. United States, No. 16-402, 2017 WL 2407484 (U.S. June 5, 2017), to address precisely this issue. As a result, the Ninth Circuit withdrew from submission United States v. Gilton, 16-10109 (9th Cir. June 9, 2017), which likewise addresses the issue that defendant asks this Court to adjudicate.

Many courts, including this one, have held that a subscriber has no reasonable expectation of privacy in a provider's records of phone usage; thus, acquiring such data does not involve a search and no warrant is necessary under the Fourth Amendment to obtain historical cell site data.  See, e.g., United States v. Dorsey, No. 14-cr-328-CAS, 2015 WL 847395, at *6 (C.D. Cal. Feb. 23, 2015); United States v. Graham, 824 F.3d 421, 427 (4th Cir. 2016); United States v. Carpenter, 819 F.3d 880, 890 (6th Cir. 2016); In re Application of United States for Historical Cell Site Data, 724 F.3d 600 (5th Cir. 2013).; United States v. Davis, 785 F.3d 498 (11th Cir. 2005) (en banc).  When the Court decided Dorsey, "every other district court within this circuit to have addressed the issue and two Courts of Appeal" concluded that historical cell site information may be obtained pursuant to a § 2703(d) order without a showing of probable cause.  Dorsey, 2015 WL 847395, *8.  Nevertheless, the Court noted that "[j]urisprudence involving cellular telephones and related technology is evolving." Since Dorsey, at least four district courts in this circuit have concluded that the Fourth Amendment protects CSLI.  See United States v. Alvarez, No. 14-cr-00120-EMC, 2016 WL 3163005, *2 (N.D. Cal. June 3, 2016); United States v. Williams, No. 13-cr-00764-WHO-1, 2016 WL 492934, *1 (N.D. Cal. Feb. 9, 2016); In re Application for Telephone Information Needed for a Criminal Investigation, 119 F. Supp. 3d 1011 (N.D. Cal. 2015) (Koh, J.); United States v. Cooper, No. 13-CR-00693-SI-1, 2015 WL 881578 (N.D. Cal. Mar. 2, 2015); United States v. Williams, 2016 WL 492934, *1-2 (N.D. Cal. 2016).

Given the still evolving state of the law and the Supreme Court's forthcoming resolution of this question, the Court declines to address whether CSLI is entitled to Fourth Amendment protection.  Rather, the Court concludes that—even if the Fourth Amendment protects the historical CSLI at issue in this case—the evidence is admissible under the good faith exception to the exclusionary rule.  See United States v. Jones, 908 F. Supp. 2d 203, 213–14 (D.D.C. 2012) ("While this issue may someday receive the attention of the Supreme Court, this Court need not decide whether the government violated the Fourth Amendment when it obtained the cell data from Cingular Wireless, since the well-recognized good-faith exception bars the application of the exclusionary rule to this case." (citation omitted)); United States v. Hardrick, No. 10-cr-202, 2012 WL 4883666, at *5 (E.D. La. Oct. 15, 2012) ("By declining to reach the Fourth Amendment issue this Court is applying the sound judicial practice of refusing to decide or address issues whose resolution is not necessary to dispose of a case, unless there are compelling reasons to do otherwise." (quotation marks omitted)).

In United States v. Leon, 468 U.S. 897 (1984), the Court held that the exclusionary rule does not apply to "evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant."  Id. at 922.  "If the purpose of the exclusionary rule is to deter unlawful police conduct," the Court explained, "then evidence obtained from a search should be suppressed only if it can be said that the law enforcement officer had knowledge, or may properly be charged with knowledge, that the search was unconstitutional under the Fourth

Amendment." Id. at 919 (quotation marks omitted). Relatedly, the exclusionary rule does not apply when officers act in "objectively reasonable reliance on a statute[,]" unless the statute is "clearly unconstitutional[.]" Illinois v. Krull, 480 U.S. 340, 349–50 (1987). The Supreme Court has since stated that "the basic insight" of Leon and other similar cases

> is that the deterrence benefits of exclusion vary with the culpability of the law enforcement conduct at issue. When the police exhibit deliberate, reckless, or grossly negligent disregard for Fourth Amendment rights, the deterrent value of exclusion is strong and tends to outweigh the resulting costs. But when the police act with an objectively reasonable good faith belief that their conduct is lawful, or when their conduct involves only simple, isolated negligence, the deterrence rationale loses much of its force, and exclusion cannot pay its way.

Davis v. United States, 564 U.S. 229, 238 (2011) (citations and quotation marks omitted). As a result, evidence generally will not be suppressed "when the magistrate, not the officer, errs." United States v. Mendonsa, 989 F.2d 366, 369 (9th Cir. 1993); see also Davis, 564 U.S. at 239 ("punishing the errors of judges is not the office of the exclusionary rule").

In his reply, defendant argues that the government is not entitled to rely on the good faith exception because the government's application for a 2703(d) order was deficient. Reply at 10–12. According to defendant, the government failed to submit facts in support of its request because the government did not attach a sworn affidavit to its application, but instead included the prosecutor's unsworn statements regarding the existence of certain facts. Id. at 10–11. Notably, defendant articulated the same purported defect in his suppression motion, but conceded that he did not "seek[] suppression as a remedy for the defects in the SCA application (and, indeed, the SCA does not provide such a remedy)." CSLI Mot. at 16–17. Even if the government's application were deficient, suppression of the CLSI would not be the appropriate remedy. See United States v. Smith, 155 F.3d 1051, 1056 (9th Cir. 1998) ("[T]he Stored Communications Act does *not* provide an exclusion remedy. It allows for civil damages, see 18 U.S.C. § 2707, and criminal punishment, see 18 U.S.C. § 2701(b), but nothing more. Indeed, the Stored Communications Act expressly rules out exclusion as a remedy[.]"). Moreover, the Court finds that the government's application was not deficient because the government set forth specific and articulable facts, as learned from FBI Special Agent Alana Soliz. See CSLI Application at 9–10. Nothing in the SCA requires that the government set forth the factual basis for its application by affidavit and defendant cites no authority establishing such a rule.

At the time the search was executed, neither the Ninth Circuit nor the Supreme Court had invalidated the SCA and there is considerable case law holding that probable cause need not be established to obtain historical CSLI under Section 2703(d). Thus, the government's conduct was objectively reasonable under Krull. Furthermore, the government relied on an apparently

valid order from a magistrate judge and their reliance on a judicially sanctioned search deserves deference under Leon.  Accordingly, the Court concludes that the good faith exception applies here.  See Alvarez, 2016 WL 3163005, *5–*7 (finding that the good faith exception applied, even after concluding that the government's warrantless search of CSLI violated the Fourth Amendment); Williams, 2016 WL 492934, at *2 (applying the good faith exception even after finding that the Fourth Amendment applies to CSLI); Cooper, 2015 WL 881578, at *9 (same);, 785 F.3d at 518 n.20 ("In the alternative, we hold that the prosecutors and officers here acted in good faith and therefore, under the well-established Leon exception, the district court's denial of the motion to suppress did not constitute reversible error."); Jones, 908 F. Supp. 2d at 216 ("Here, the actions of law enforcement officials were objectively reasonable when they acquired prospective cell data under the SCA from a third-party provider.  Given the unsettled nature of the law in 2005, which has remained the case even up to the present, it was reasonable for them to believe that the Fourth Amendment was not implicated.").[1]  Accordingly, defendant's motion to suppress is **DENIED**.

## V.    DNA SAMPLES

The government requests that the Court compel defendant to provide samples of his DNA to the government so that the government can compare defendant's DNA to DNA samples obtained from shirts found in Reynolds's luggage.  DNA Mot. at 1.  The government concedes that the DNA evidence taken from the shirts is of "limited" quality, thereby lowering the statistical certainty with which the government can determine whether defendant's DNA matches any DNA on the shirts.  Id. at 4–5.  Nevertheless, the government argues that a determination that there is a statistical probability of a match would still be highly probative.  Id. at 5.  Defendant, in turn, argues that the possibility of statistically uncertain result creates a risk of unfair prejudice to defendant.  Opp'n to DNA at 5.

The Ninth Circuit has found that a defendant may be compelled to provide a blood sample upon a showing of probable cause to believe that the defendant's sample would have evidentiary value.  United States v. Wright, 215 F.3d 1020, 1025 (9th Cir. 2000).  Here, the Court finds that the government has established probable cause to compel a cheek swab because: (a) the indictment alleges that defendant accessed the luggage in which the cocaine and DNA were found shortly before it was seized, dkt. 1 ¶ 12; (b) the FBI recovered DNA samples from the shirts in the luggage, dkt. 43-2, Declaration of Trayvon Barnes ¶ 3; and (c) the DNA found on seven of the eight shirts is suitable for comparison to a DNA sample from a known individual, dkt. 43-3, Declaration of Brandon McCollum ¶¶ 3, 5.  The Court therefore **GRANTS** the government's motion and authorizes the government to take DNA samples of defendant by way of oral swab forthwith.

---

[1] Although Jones concerned SCA orders for prospective as opposed to historical CSLI, the case's good faith analysis is largely applicable here.

The Court notes, however, that the *admissibility* of the DNA evidence obtained from defendant is a separate question. Depending on the statistical certainty of a match between defendant's DNA and the DNA found on the shirts, the Court may exclude the DNA evidence if its probative value is substantially outweighed by a danger of unfair prejudice or a risk of misleading the jury.

## VI. CONCLUSION

In accordance with the foregoing, the Court **DENIES** defendant's motion to exclude Paris's testimony regarding the price of cocaine on the East and West Coasts and about Los Angeles as a hub for cocaine distribution. The Court **GRANTS** defendant's motion to exclude Paris's testimony regarding the mechanics of cocaine distribution and the role of couriers in drug-trafficking organizations.

The Court **DENIES** defendant's motion to suppress historical CSLI and its fruits and to preclude Black's expert testimony related to CSLI.

The Court **GRANTS** the government's motion for an order authorizing the taking of DNA samples from defendant and authorizes the government to take DNA samples of defendant by way of oral swab as soon as is practicable.

IT IS SO ORDERED.

|  | 00 | : | 41 |
|---|---|---|---|
| Initials of Deputy Clerk | | CMJ | |