# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### CRIMINAL MINUTES – GENERAL                    'O'

| Case No. | 2:17-cr-00047(A)-CAS | Date | February 5, 2018 |
|----------|----------------------|------|------------------|

| Present: The Honorable | CHRISTINA A. SNYDER |
|------------------------|---------------------|

| Interpreter | N/A |
|-------------|-----|

| CATHERINE JEANG | LAURA ELIAS | ALEXANDER WYMAN<br>WILLIAM ROLLINS<br>JOANNA CURTIS |
|-----------------|-------------|------------------------------------------------------|
| *Deputy Clerk* | *Court Reporter/Recorder, Tape No.* | *Assistant U.S. Attorney* |

| U.S.A. v. Defendant(s): | Present | Cust | Bond | Attorneys for Defendants: | Present | App. | Ret. |
|-------------------------|---------|------|------|---------------------------|---------|------|------|
| GASTON BROWN | X | X | | EVAN JENNESS<br>ELLEN BARRY | X<br>X | | X<br>X |

**Proceedings:** DEFENDANT'S MOTION IN LIMINE TO EXCLUDE PROFFERED EXPERT STEVE PARIS (Dkt. 82, filed October 2, 2017)

DEFENDANT'S MOTION IN LIMINE TO COMPEL DISCLOSURE OF ALLEGED CO-CONSPIRATORS KNOWN TO THE PROSECUTION (Dkt. 117, filed January 22, 2018)

DEFENDANT'S MOTION IN LIMINE TO EXCLUDE EVIDENCE OF OTHER ACTS AND STRIKE AKAs FROM THE FIRST SUPERSEDING INDICTMENT (Dkt. 118, filed January 22, 2018)

DEFENDANT'S MOTION IN LIMINE TO RECONSIDER THE COURT'S PRIOR ORDER ON ADMISSIBILITY OF CELL SITE TRACKING EVIDENCE (Dkt. 119, filed January 22, 2018)

GOVERNMENT'S MOTION IN LIMINE TO ADMIT EVIDENCE OF DEFENDANT'S OTHER ACTS (Dkt. 122, filed January 22, 2018)

GOVERNMENT'S MOTION IN LIMINE TO EXCLUDE EVIDENCE OF AN ALIBI DEFENSE (Dkt. 123, filed January 22, 2018)

GOVERNMENT'S MOTION IN LIMINE TO ADMIT DEFENDANT'S JAIL CALLS AND TO EXCLUDE HEARSAY (Dkt. 124, filed January 22, 2018)

GOVERNMENT'S MOTION IN LIMINE TO ADMIT BUSINESS RECORDS (Dkt. 125, filed January 22, 2018)

## I.    INTRODUCTION & BACKGROUND

On January 26, 2017, a federal grand jury indicted defendant Gaston Brown, charging him with one count of conspiracy to possess with intent to distribute and to distribute cocaine and one count of possession with intent to distribute cocaine.  Dkt. 1.  On September 29, 2017, the government filed a superseding indictment, charging defendant with (1) one count of conspiracy with intent to distribute and to distribute cocaine in violation of 21 U.S.C. § 846; (2) one count of possession with intent to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(ii); (3) one count of unlawful transfer, possession, and use of a means of identification in violation of 18 U.S.C. §§ 1028(a)(7), (b)(3)(A); (4) one count of use of a counterfeit access device in violation of 18 U.S.C. § 1029(a)(1); and (5) aggravated identity theft in violation of 18 U.S.C. § 1028A(a)(1).  Dkt. 87.  The government alleges that defendant conspired with Marsha Gay Reynolds, a flight attendant, to transport cocaine from Los Angeles International Airport ("LAX") to John F. Kennedy International Airport ("JFK") in New York, and that he accomplished the alleged crimes by using the stolen identity of M.W., a mentally disabled man from Massachusetts.  See generally id.  Trial is set to begin on February 13, 2018.  See dkt. 127.

On October 2, 2017, defendant filed a motion in limine to exclude testimony by law enforcement agent Steve Paris, dkt. 82, and on October 9, 2017, defendant filed a supplemental brief to his motion in limine, dkt. 92.

On January 22, 2018, defendant filed a motion to compel disclosure of alleged co-conspirators known to the prosecution, dkt. 117; a motion to exclude "other acts" evidence and strike AKAs from the first superseding indictment, dkt. 118; and a motion to reconsider the Court's order on defense's motion to exclude cell site tracking evidence and testimony, and for related discovery under recent precedent, dkt. 119.

On the same day, the government filed a motion to admit evidence of defendant's other acts, dkt. 122; a motion to exclude evidence of an alibi defense, dkt. 123; a motion to admit defendant's jail calls and to exclude hearsay, dkt. 124; and a motion to admit business records under the self-authentication provision of Federal Rule of Evidence 901(11), dkt. 125.  On January 29, 2018, defendant filed oppositions to dkt. 122, dkt. 123, and dkt. 124, and the government filed oppositions to dkt. 82, dkt. 117, dkt. 118, and dkt. 119.

On February 2, 2018, the Court held oral argument.  Having carefully considered the parties' arguments, the Court finds and concludes as follows.

## II.    DEFENDANT'S MOTIONS IN LIMINE

### A.    Exclusion of Testimony by Law Enforcement Agent Steve Paris

Defendant requests an order from the Court excluding testimony from Drug Enforcement Administration special agent Steve Paris. Defendant asserts that, based on his analysis of discovery produced pursuant to the Court's August 7, 2017 order, newly-produced prior testimony and Paris's resume require exclusion of his testimony for two reasons. Dkt. 82 at 4. First, defendant asserts that Paris's prior testimony shows that he lacks the relevant experience as an expert regarding cocaine trafficking cases and demonstrates that he has "questionable credibility." Id. at 4–5. Defendant argues that Paris has only testified in a single cocaine case and admits that "an extremely high percentage" of the matters he has conducted during his career were *methamphetamine* matters, id. at 6. With respect to Paris's allegedly contradictory statements, defendant contends that Paris testified in 2009 during a marijuana case that his work "centered mostly around marijuana investigations," yet also testified in a 2015 methamphetamine case that the "vast majority" of the investigations he participated in over his 24-year career with the DEA involved methamphetamine. Id. at 6 (citing United States v. Fuller, 08-cr-240-JFW; United States v. Gallarzo, 14-cr-666-SVW). Defendant argues that Paris claims his career is focused on whatever narcotic is at issue in the case at hand, and that regardless, because he claims to have spent the "vast majority" of his career working on methamphetamine cases, he is not a suitable expert on Los Angeles cocaine-trafficking or the relative prices of cocaine on the East and West Coasts. Id. at 6–7. Moreover, defendant asserts that Paris has repeatedly given numerically impossible testimony concerning the number of investigations he has handled. Id. at 7–8. Accordingly, defendant asserts that Paris's alleged inability to accurately portray his expertise demonstrates his unreliability.

Second, defendant contends that Paris' testimony should be excluded because his claimed credentials are unverified. Id. at 4–5. Insofar as the government intends to elicit testimony about Paris's qualifications on his resume, defendant asserts that he is entitled to disclosure of the documents supporting his claims. Id. For example, defendant argues that Paris claims to have written several journal articles published in professional law enforcement journals on his August 2017 resume and mid-2012 resume—yet defendant's search revealed only four articles by Paris, none of which are relevant to the case and instead pertain to physical fitness, a product evaluation of a blanket, and two articles from 2001 entitled "What the DEA Can Do For You" and "Tactical Safety Tips for Clandestine Drug Lab Entries." Id. Defendant contends that none of these relate to the prices of cocaine or any other drug or Los Angeles as a trafficking hub, which are the only potential subjects for testimony in this case. Id. Defendant requests that if Paris has authored other articles, the government should provide copies, and if not, the government should be prohibited from eliciting testimony on this issue if Paris is not a published author of anything relevant. Id. at 12. Last, defendant argues that Paris makes a number of unverifiable claims about his association memberships, and requests that the Court

preclude the government from eliciting testimony about his membership claims unless they are verified and are relevant to testimony proffered by Paris. Id. at 12–13.

In sum, defendant contends that the Court's prior ruling relied on Paris's 1,000 hours of training in narcotics investigation and supervisory and instructional roles at the DEA, as alleged in the government's expert notice regarding Paris. Id. at 14. Defendant contends that, unless the government can establish that Paris has significant training pertinent to Los Angeles as a purported hub for cocaine trafficking, and the relative prices of cocaine between the East and West Coasts in March of 2016, it cannot establish the relevance of Paris's training, particularly because Paris's resumes do not indicate that he has ever served as a supervisor in any capacity. Id. at 14–15. Defendant requests that the Court exclude Paris's testimony and insofar as it permits Paris to testify, he argues that the government should produce verification of Paris's claimed credentials, identify those it cannot verify, and be limited to eliciting from Paris only his verified credentials that are relevant to the two substantive areas of testimony identified as permissible by the Court. Id. at 15.

In supplemental briefing, defendant argues that newly-discovered (and previously undisclosed) additional transcripts of Paris's testimony reinforce defendant's position that Paris is not credible. Dkt. 92 at 5. Defendant asserts that Paris's testimony should be excluded based on Federal Rule of Criminal Procedure 16(a)(1)(G). On the government's Rule 16 expert witness disclosure, the government states that Paris's testimony will be based on "his two decades of training and experience" and his 2012 resume. Id. & Ex. A. Yet defendant contends that, in recent testimony for the United States Attorney's Office, Paris testified that his opinion about the historical price of cocaine in Los Angeles is based on a *DEA database*. Id. at 5–6 & Ex. A (citing United States v. Geringer-Ganor, No. 13-cr-511-SJO). Defendant asserts that he has not been given any discovery on this DEA database that is the source of Paris's opinions, or information regarding the methodology by which the DEA database was created, or any opportunity to test its accuracy. Id. at 6. Accordingly, defendant argues that Paris's testimony should be excluded based on this alleged violation of Rule 16 because the prejudicial effect of Paris testifying about an undisclosed database outweighs any probative value in helping the jury to evaluate Paris's opinion under Federal Rule of Evidence 703.

Next, defendant argues that insofar as the government's Rule 16 notice does not indicate intent to elicit testimony from Paris about dosing quantities, or quantities indicative of possession for distribution versus personal use, the Court should exclude this testimony if it permits Paris to testify at trial. Id. at 6.

Last, defendant asserts that Paris's testimony in United States v. Ortega Garcia, No. 17-cr-203-DSF undermines either the credibility of the government's lead witness, Marsha-Gay Reynolds, who testified before the grand jury that she was a "blind mule," or the government's claims that Reynolds was a co-conspirator with defendant. Id. at 9–10. Paris' prior testimony

reveals his opinion that drug organizations commonly use transporters who *know* what they are transporting, and that "blind mule" is inconsistent with a courier who is paid thousands of dollars, has telephone contact with persons in the organization, and who meets with co-conspirators. Id. at 10. Defendant argues that if Reynolds were a "blind mule," Paris's expert testimony that there is minimal contact between blind mules and traffickers undermines the government's claims that Reynolds had ongoing telephone contact with defendant, repeatedly met him, and received thousands of dollars for her alleged activity, particularly in light of the government's testimony it elicited from Reynolds that she was indeed a "blind mule." Id. at 11. Defendant argues that Paris gave similar testimony in United States v. Matsri, No. 13-cr-511-SJO. Id. In light of his arguments with respect to Paris's potential testimony, defendant renews his request for a Daubert hearing.

In opposition, the government recounts that the Court's August 7, 2017 order found that Paris could testify at trial regarding (1) the price of cocaine on the East and West Coasts and (2) Los Angeles's role as a cocaine distribution hub. Dkt. 135 at 1. The government argues that none of the transcripts that defendant discusses are relevant to these two areas of proposed expert testimony, and that the Court's prior order makes clear that Paris is qualified to testify on these issues. Id. Moreover, insofar as defendant requests to exclude any testimony regarding whether possession of cocaine is for distribution rather than personal use, the government argues that this testimony falls within the scope of Paris's already-approved testimony on the value of the cocaine. Id. at 2, n.1 (citing United States v. Ramirez-Valdez, 468 F.2d 235, 236 (9th Cir. 1972); United States v. Munford, 431 F. Supp. 278, 290 (E.D. Pa. 1977)).

The government further argues that Paris is adequately qualified to testify regarding the two areas of testimony permitted by the Court's prior order, and that Paris's resume demonstrates that he has over two decades of experience conducting undercover operations, coordinating with confidential sources, interviewing drug dealers, and investigating drug trafficking organizations. Id. at 3. This experience provides Paris with knowledge of the pricing of cocaine in the United States, including the price variation between the East and West Coasts. Id. at 3-4. Contrary to defendant's representations, the government argues that Paris has testified as an expert on the two approved issues in United States v. Dinardo, 09-cr-1131-MWF, and that courts routinely recognize law enforcement officers with far less experience than Paris as qualified to testify about the price of drugs. Id. at 5 (citing Alatorre, 222 F.3d at 1104; United States v. Neeley, 308 F. App'x 870, 876–77 (6th Cir. 2009)). Moreover, the government contends that the other area of Paris's expected testimony—that Los Angeles is a cocaine distribution hub—is so commonly known that it is almost an established fact, and that courts across the country have long recognized and permitted expert testimony establishing that Los Angeles is a distribution hub for cocaine. Id. at 6 (citing United States v. Ocampo, 402 F. App'x 90, 92 (6th Cir. 2010); United States v. Nobles, 69 F.3d 172, 184 (7th Cir. 1995); United States v. McCarthur, 6 F.3d 1270, 1278 (7th Cir. 1993); United States v. Washington, 957 F.2d 559, 561 (8th Cir. 1992); United States v. Ortega, 886 F.2d 1062, 1063 (8th Cir. 1989); United

States v. Turner, 628 F.2d 461, 463 (5th Cir. 1980); United States v. Pace, 709 F. Supp. 948, 957 (C.D. Cal. 1989)).

In sum, the government asserts that defendant's motion is simply an attack on Paris's credibility, yet it is black-letter law that credibility determinations are for the factfinder and do not form a basis for exclusion of an expert witness. Id. at 8 (citing Primiano v. Cook, 598 F.3d 558, 566 (9th Cir. 2010); United States v. Sandoval-Mendoza, 472 F.3d 645, 656 (9th Cir. 2006); United States v. Barnard, 490 F.2d 907, 912 (9th Cir. 1973); Emblaze Ltd. v. Apple Inc., 52 F. Supp. 3d 949, 954 (N.D. Cal. 2014)).

As an initial matter, defendant fails to demonstrate to the Court why any prior testimony from Paris regarding his opinions on the use of "blind mules" is relevant to the instant motion, insofar as the Court has ruled that Paris's testimony shall be limited in scope. In particular, the Court concluded in its prior August 7, 2017 order that, based on Paris's qualifications and experience set forth in the government's expert disclosures, he may offer testimony regarding the price of cocaine on the East and West Coasts in addition to Los Angeles's purported role as a distribution hub for cocaine. See dkt. 62 at 4–5.

With respect to the Court's determination as to Paris's reliability as an expert witness, the contours of a district court's gatekeeping duty are tied to the particular facts of each case. United States v. Alatorre, 222 F.3d 1098, 1101 (9th Cir. 2000) (citation omitted). "The law grants a district court the same broad latitude when it decides how to determine reliability as it enjoys in respect to its ultimate reliability determination." Alatorre, 222 F.3d at 1102, 1104 (9th Cir. 2000) (quoting Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 141–42 (1999)). Here, Paris's expected testimony in the two areas approved by the Court will be subject to attack by "cross-examination, contrary evidence, and attention to the burden of proof, not exclusion." Primiano v. Cook, 598 F.3d 558, 564 (9th Cir. 2010). Moreover, the Court has preliminarily found that Paris's proposed testimony regarding the prices of cocaine on the East and West Coasts and Los Angeles as a cocaine distribution hub is reliable, and it has further concluded that these areas of testimony are relevant to the charges. Accordingly, the Court has fulfilled its gatekeeping duty as to the reliability and relevancy of Paris's expected testimony, and **DENIES** defendant's motion to exclude Paris's proposed testimony regarding the two approved substantive areas. The Court also declines defendant's renewed request to hold a Daubert hearing.

Defendant next contends that the government is in violation of Rule 16(a)(1)G) because Paris's knowledge of the price of cocaine is based on a DEA database, according to Paris's earlier testimony in a separate case regarding the price of cocaine in Los Angeles during the spring of 2013. Insofar as Paris's expert opinion regarding the price of cocaine is based on his training and experience—as the government's Rule 16 disclosure represents, see dkt. 31 & Ex.

A—defendant will have the opportunity to cross-examine Paris regarding the reliability of Paris's opinions, including the basis for his opinion regarding the price of cocaine.

Defendant further requests that the Court exclude Paris's testimony about dosing quantities or quantities indicative of possession for distribution versus personal use, on the basis that the government failed to include this in its Rule 16 disclosure.  In pertinent part, the government's Rule 16 disclosure with respect to Paris provides that

> Paris is expected to testify regarding (1) the mechanics of cocaine distribution; (2) how Los Angeles is a distribution hub for cocaine; (3) how cocaine is cheaper on the West Coast of the United States as compared to the East Coast; (4) the role of couriers in drug-trafficking organizations; (5) and the price of a kilogram of cocaine on the West Coast versus the East Coast in March 2016.  The bases and reasons for his opinions include his two decades of training and experience investigating drug traffickers.  As set forth in his CV, SA Paris has received over 1,000 hours of formal training in narcotics investigations, in addition to hundreds of hours of informal training in the field, and he has carried out countless drug investigations, particularly in Southern California, where he is intimately familiar with the methods and techniques used by gangs and other individuals involved in the manufacture, distribution, and sale of illicit drugs, including cocaine.

Dkt. 31 & Ex. A.  The government contends that the quantities indicative of possession for distribution or personal use falls within the scope of Paris's already-approved testimony on the value of the cocaine, given that the approximately 26.94 kilograms of cocaine at issue in this case has substantial value.  Dkt. 134 at 2, n.1.

Rule 16(a)(1)(G) provides that the government's written summary of expert witness testimony must describe the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications.  An Advisory Committee Note to Rule 16 provides that this expert summary is intended to "minimize surprise that often results from unexpected expert testimony … and to provide the opponent with a fair opportunity to test the merit of the expert's testimony through focused cross-examination."  Fed. R. Crim. P. 16 1993 amend.  The Court finds that Paris's knowledge, training, and experience in narcotics investigation—as set forth in the government's Rule 16 disclosure—provides sufficient notice and foundation for his proffered testimony regarding the intended use of the cocaine at issue.  See United States v. Toliver, 380 Fed. Appx. 570, 574 (9th Cir. 2010) (reasoning that a Rule 16(a)(1)(G) notice was adequate when detectives' knowledge, experience, and investigation of gang activity, as proffered in the Rule 16(a)(1)(G) notice, also provided a sufficient foundation for their testimony).  Moreover, defendant has failed to demonstrate that Paris's expected opinion regarding the intended use of the cocaine is unfairly surprising or prejudicial.  Therefore, the Court finds that the government's Rule 16(a)(1)(G) notice is adequate and **DENIES** defendant's motion to exclude

Paris's testimony regarding whether the quantity of cocaine at issue is indicative of distribution or personal use.

### B.    Compelled Disclosure of Alleged Co-Conspirators Known to the Prosecution

Defendant asserts that the first superseding indictment alleges that Gaston Brown, "co-conspirator Marsha Gay Reynolds, *and others known ... to the Grand Jury*, conspired and agreed with each other" to commit the charged crimes. Dkt. 117 at 4 (citing Dkt. 87). Defendant contends that the government has yet to identify which among the numerous initials CF, DW, CH, DH, MJ, AJ, JL, KM, JM, LM, PO, RP, RR, and GR are those alleged in the charges to be known to the government as conspirators. Defendant notes that Federal Rule of Criminal Procedure 7(f) empowers the Court to direct the government to provide a bill of particulars, and he argues that identification of the alleged conspirators known to the government would enable the defense to investigate and potentially call as witnesses persons who would discredit Reynold's anticipated testimony implicating defendant. Accordingly, defendant requests that the government be ordered to file a bill of particulars identifying all alleged conspirators in the charged crimes whose identities are known. Id. at 5.

In opposition, the government argues that the first superseding indictment contains specific dates, times, and overt acts that make it explicit what conduct forms the basis of the charges against defendant. Id. at 1–2. The purpose of a bill of particulars is to ensure that defendant has sufficient information to prepare a defense, to avoid prejudicial surprise at trial, and to enable a defendant to avoid double jeopardy in any subsequent prosecution for the same offense. Id. at 2 (citing United States v. Ayers, 924 F.2d 1468, 1483 (9th Cir. 1991)). The government argues that, where the indictment sufficiently informs the defendant of the charges against him, a bill of particulars is not warranted. Id. at 3 (citing United States v. Federbush, 625 F.2d 246, 252 (9th Cir. 1980)). Moreover, the government contends that the Ninth Circuit has specifically held that, with regard to the identity of unnamed co-conspirators, the fact that their identities are unknown "does not warrant a bill of particulars." Id. (citing United Sates v. DiCesare, 765 F.2d 890, 897-98 (9th Cir. 1985)). Given that a bill of particulars is not a discovery device, and its purpose is simply to inform the defendant of the nature of the charge against him, the government argues that there is no basis under Brady to suggest that any exculpatory information has been withheld from defense. Id. at 4 (citing United States v. Huggans, 650 F.3d 1210, 1220 (8th Cir. 2011)).

Criminal Rule of Procedure 7(f) provides that "[t]he court may direct the government to file a bill of particulars." A bill of particulars "is appropriate where a defendant requires clarification in order to prepare a defense." United States v. Long, 706 F.2d 1044, 1054 (9th Cir. 1983). More specifically, its purposes are (1) to "inform the defendant of the nature of the charges against him with sufficient precision to enable him to prepare for trial," (2) "to avoid or minimize the danger of surprise at the time of trial," and (3) to enable a defendant "to plead his

acquittal or conviction in bar of another prosecution for the same offense when the indictment itself is too vague, and indefinite for such purposes." United States v. Ayers, 924 F.2d 1468, 1483 (9th Cir.1991) (quoting United States v. Giese, 597 F.2d 1170, 1180 (9th Cir. 1979)). "A bill of particulars should be limited to these purposes: '[a] defendant is not entitled to know all the evidence the government intends to produce but only the theory of the government's case.'" United States v. Cerna, No. CR 08–0730 WHA, 2009 WL 2998929, at *2 (N.D. Cal. Sept. 16, 2009) (quoting United States v. Ryland, 806 F.2d 941, 942 (9th Cir. 1986)). It is not the role of the government, nor is it the purpose of a bill of particulars, to wade through the evidence to formulate a defendant's case. See United States v. Mitchell, 744 F.2d 701, 705 (9th Cir. 1984) (the purposes of a bill of particulars "are served if the indictment itself provides sufficient details of the charges and if the Government provides full discovery to the defense."); United States v. Ortiz, 2013 WL 6842541, at *6 (N.D. Cal. Dec. 27, 2013) ("[A] defendant may not use a motion for a bill of particulars to obtain full discovery of the government's evidence.") (citing Giese, 597 F.2d at 1181); United States v. Smith, 776 F.2d 1104, 1111 (3d Cir. 1985) (a bill of particulars "is not intended to provide the defendant with the fruits of the government's investigation."). "In determining if a bill of particulars should be ordered in a specific case, a court should consider whether the defendant has been advised adequately of the charges through the indictment and all other disclosures made by the government." Long, 706 F.2d at 1054. "The decision whether to grant a request for a bill of particulars is directed to the trial court's discretion." Id. (citing Will v. United States, 389 U .S. 90, 99 (1967)).

The requested additional information of the names of the "others known … to the Grand Jury" is also unnecessary to apprise defendant of the charges that he faces. There is no requirement that an indictment include the names of all alleged co-conspirators, and a bill of particulars is not warranted for providing the names of unidentified co-conspirators. See United States v. DiCesare, 765 F.2d 890, 897 (9th Cir.), amended, 777 F.2d 543 (9th Cir. 1985) (affirming the denial of a bill of particulars seeking to obtain the names of unknown conspirators). Defendant does not otherwise argue—aside from the first superseding indictment's failure to identify other known conspirators—that the indictment fails to adequately apprise defendant of the charges against him. And, "in the absence of surprise or prejudice, there is no absolute requirement that … [co-conspirators] be identified at all." U.S. v. Burt, 765 F.2d 1364, 1367 (9th Cir. 1985). Accordingly, on the basis of defendant's contention that the identities of the alleged co-conspirators may be exculpatory, Ninth Circuit authority directly addresses this argument insofar as unidentified co-conspirators *need not* be identified. Because unidentified co-conspirators need not be identified, and because defendant fails to demonstrate that the first superseding indictment is unfairly surprising, prejudicial, or

increases the risk of double jeopardy, the Court finds that the government has apprised defendant of its theory of the charges.  Defendant's motion for a bill of particulars is **DENIED**.[1]

### C.    Exclusion of "Other Acts" and Striking AKAs from the First Superseding Indictment

#### 1.    Exclusion of Defendant's "Other Acts"

In a letter to defendant, the government represents that it intends to introduce evidence that defendant obtained identification documents in the name of J.B., and that he used the J.B. identity to further his drug-trafficking activities.  Dkt. 118 at 4.  In addition, it intends to introduce evidence that defendant is an "illegal alien" who was living in the United States illegally during the time period in the indictment; that defendant was arrested in April 2016 when he attempted to enter the United States on a panga boat; and that defendant was subsequently convicted under 8 U.S.C. § 1326.  Both the government and defendant filed motions regarding the admissibility of the aforementioned evidence.  Defendant requests that the evidence be excluded as irrelevant, and argues that any minor relevance would be substantially outweighed by its prejudicial impact.  Id.  In turn, the government requests that the evidence be admitted because defendant's use of the J.B. identity was an instrumental part of his drug-trafficking activities, and evidence of his arrest and conviction for illegal reentry is essential to enabling the government to tell a coherent story of defendant's crimes.  Dkt. 122 at 4–5.

Defendant argues that these items sought to be admitted are unrelated to the charges in this case.  Dkt. 118 at 4.  Defendant's alienage and illegal reentry conviction are neither an element of, nor related in any way to, the charges.  Id.  Defendant contends that this information is meant to incite xenophobic biases and could induce unfair juror prejudice against undocumented persons such as defendant.  Id.  According to defendant, details of defendant's legal status and conviction for illegal reentry do not advance the discrete purposes for which Federal Rule of Evidence 404(b) permits "other acts" to be admitted—such as motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.  Id. at 7.  Moreover, defendant argues that evidence pertaining to J.B. is unrelated to the charges, and because the first superseding indictment alleges identity theft regarding only M.W., introduction of evidence pertaining to J.B. is likely to create substantial confusion.  Id.

---

[1]    At the hearing the parties indicated that they would meet and confer to determine whether the government intends to present a case involving additional co-conspirators.  Pending the result of this decision, the Court's ruling on this issue is without prejudice.

Defendant contends that Rule 403 excludes the admission of this evidence, and that insofar as the Court declines to exclude the evidence, he requests a limiting instruction.[2] Id. at 8–9.

In opposition, the government contends that the "other acts" evidence is both highly relevant and not unduly prejudicial. Dkt. 132 at 1. First, the proposed evidence is inextricably intertwined with defendant's charges and with proving motive, knowledge, intent, preparation, plan, and absence of mistake. Id. at 3. Defendant's alleged use of the J.B. identity is highly probative of defendant's knowledge, intent, plan, preparation, and absence of mistake or accident, and the government asserts that it intends to introduce that both M.W. and J.B. were clients of the same mental healthcare provider in Springfield, Massachusetts—the same city where defendant's ex-wife lives. Id. The government also intends to introduce identification documents under the names of both J.B. and M.W. that bear defendant's photograph. Id. Accordingly, that defendant appears to have stolen the identity of J.B. is relevant to whether defendant also stole the identity of M.W. Id.

Second, the government contends that defendant's status as an illegal immigrant and his subsequent conviction for illegal reentry are essential to explaining defendant's motive; without explaining to the jury that defendant was in the United States illegally, the jury will not understand why defendant was stealing identities. Id. at 4. Moreover, the government contends that defendant's conviction for illegal reentry and the circumstances surrounding his conviction are highly probative of defendant's knowledge that law enforcement might be looking for him and his intent to avoid detection. Id. at 4–5.

Pursuant to Rule 404(b), evidence of a defendant's crimes, wrongs, or other bad acts may be admitted to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident[.]" Fed. R. Evid. 404(b). Rule 404(b) is an "inclusi[ve]" rule meaning "other acts evidence is admissible whenever relevant to an issue other than defendant's criminal propensity." United States v. Mehrmanesh, 689 F.2d 822, 830 (9th Cir. 1982). Evidence is therefore admissible under Rule 404(b) if it (1) tends to prove a material fact; (2) the other act is not too remote in time; (3) the evidence is sufficient to support a finding that the person committed the act; and (4) if admitted to prove intent or knowledge, the act is similar to that charged. United States v. Tsinnijinnie, 91 F.3d 1285, 1288-89 (9th Cir. 1996). Such

---

[2]      In opposition to the government's motion to admit evidence of other acts, dkt. 122, defendant makes the following additional arguments. First, he asserts that there is no evidence that J.B.'s identity was ever used to travel between Los Angeles and New York, was ever used during the period of the charged conspiracy, or was ever used in Los Angeles. Dkt. 129 at 5. Second, with respect to the government's argument that defendant's use of the J.B. identity will prove his intent, knowledge, and absence of mistake in committing the identity theft charges, defendant asserts this argument is irrelevant unless defendant were to take the position that he stole MW's identity, but lacked intent or knowledge, or did so by mistake. Id. at 8.

evidence should be admitted "unless its prejudicial impact substantially outweighs its probative value" pursuant to Rule 403.  United States v. Johnson, 132 F.3d 1279, 1282 (9th Cir. 1997). "The Government, however, must carry the burden of showing how the proffered evidence is relevant to one or more issues in the case; specifically, it must articulate precisely the evidential hypothesis by which a fact of consequence may be inferred from the other acts evidence." Mehrmanesh, 689 F.2d at 830.  "In admitting relevant evidence under rule 404(b), the trial court must balance the probative value of the evidence against the possibility that the jury would be prejudiced against the defendant because of his participation in other criminal conduct." United States v. Young, 573 F.2d 1137, 1140 (9th Cir. 1978) (internal citation omitted).  "This determination is generally a matter of discretion for the trial court." Young, 573 F.2d at 1140 (citing United States v. Hearst, 563 F.2d 1331, 1336 (9th Cir. 1977); United States v. Rocha, 553 F.2d 615, 616 (9th Cir. 1977)).

Defendant is alleged to have obtained a Connecticut driver's license in the name of M.W., a mentally disabled man from Massachusetts, which he used to travel on commercial airline flights back and forth across the country and to engage in drug-trafficking activity.  Dkt. 122 at 2.  Defendant's use of the M.W. identity is implicated in counts one, three, four, and five. See Dkt. 87.  In addition to his alleged use of the M.W. identity, defendant also allegedly obtained a United States passport and a Georgia driver's license in the name of J.B., which he used to book airline flights between the United States and Jamaica.  Dkt. 122 at 3.  However, the government is not in possession of evidence that defendant used the J.B. identity within the Central District of California, and defendant is not charged in this case with identity theft of J.B.[3]   In light of these factual circumstance and the charged crimes, the Court finds that the government's request to admit evidence regarding defendant's alleged use of J.B.'s identity is permissible.  Defendant's alleged use of J.B.'s identity tends to show knowledge and absence of mistake or accident with respect to counts one, three, four, and five insofar as these charges for drug-trafficking conspiracy, unlawful use of identification, unlawful use of a counterfeit access device, and aggravated identity theft hinge on defendant's alleged use of M.W., another allegedly stolen identity.  See dkt. 87.  Defendant's alleged use of J.B.'s identity (1) tends to prove the material fact of knowledge; (2) is alleged to have occurred around the time of the alleged crimes; (3) supports a finding that defendant committed counts one, three, four, and five; and, (4) because it is admitted to prove knowledge, the alleged theft of J.B.'s identity is similar to the alleged theft of M.W.'s identity, which is the act charged.  See Tsinnijinnie, 91 F.3d 1285 at 1288-89.  Accordingly, the first four prongs for admission under Rule 404(b) are satisfied.

Defendant contends that admission of evidence regarding his alleged use of the name of J.B. should be excluded under Federal Rule of Evidence 403 because this evidence is likely to

---

[3]      Defendant faces pending charges relating to his alleged use of J.B.'s identity in the District of Massachusetts.  Dkt. 129 at 7.

result in juror confusion, as defendant is charged with the identity theft of M.W. and *not* J.B. The Court finds that defendant's alleged use of the J.B. identity is highly probative because it uniquely demonstrates defendant's knowledge and absence of mistake, and any potential for juror confusion can be dealt with through a limiting instruction. Accordingly, with respect to the government's request to admit evidence regarding defendant's use of identification documents in the name of J.B., the Court **DENIES** defendant's motion. Nonetheless, the Court will provide a limiting instruction with respect to defendant's use of J.B's identity, and hereby orders the government to exclude reference of defendant's pending charges in the District of Massachusetts from its case-in-chief.

Regarding the government's proposed introduction of evidence that defendant was living in the United States illegally during the time period in the indictment; that defendant was arrested in April 2016 when he attempted to enter the United States on a panga boat; and that defendant was subsequently convicted of illegal reentry, the Court finds that these requests should be denied. The Court recognizes that these acts appear to have some relevance insofar as defendant's legal status is connected to his alleged identity theft and insofar as his illegal reentry may demonstrate his knowledge that he was a suspect of a crime. Yet on balance, their prejudicial effect substantially outweighs any relevance to the government's case-in-chief insofar as their admission would invite the opportunity to appeal to the prejudice and bias of members of the jury on the basis of national origin.[4] Accordingly, the Court **GRANTS** defendant's motion to exclude the evidence regarding his illegal presence in the United States during the period alleged in the indictment; his attempt to enter the United States on a panga boat; and his subsequent conviction for illegal entry.

### 2.     Striking Defendant's Aliases from the First Superseding Indictment

Federal Rule of Criminal Procedure 7(d) permits the Court to strike surplusage from the indictment. "The purpose of a motion to strike under Fed. R. Crim. P. 7(d) is to protect a defendant against prejudicial or inflammatory allegations that are neither relevant nor material to the charges." United States v. Terrigno, 838 F.2d 371, 373 (9th Cir. 1988). A motion to strike surplusage should only be granted where the disputed allegations are prejudicial or inflammatory and not relevant or material to the charges. Terrigno, 838 F.2d at 373; see Charles A. Wright & Andrew D. Leopold, Federal Practice and Procedure § 128, Amendment of Indictments; Surplusage (4th ed.) (a motion to strike surplusage from an indictment should not be granted "unless it is clear that the allegations are *not relevant* to the charge and are inflammatory and prejudicial.") (emphasis added). This "is an exacting standard." Id.

---

[4]     Moreover, the term "illegal alien" as used in the government's opposition brief, dkt. 132 at 1, is prejudicial insofar as it is an incendiary, derogatory expression. See Rojas v. Richardson, 703 F.2d 186, 191 (5th Cir.), on reh'g, 713 F.2d 116 (5th Cir. 1983).

Defendant moves to strike the words "Kevin Brown," "M.W.," and "J.B." from the first superseding indictment because the inclusion of these aliases in the caption is unnecessary and highly prejudicial insofar as they misidentify defendant. Dkt. 118 at 9. According to defendant, the aliases lead the jury to believe that the allegation is an identifier, rather than a mere allegation on which the prosecution bears the burden of proof beyond a reasonable doubt with respect to the identify theft charges. Id. Moreover, the reference to J.B. would, in defendant's view, confuse the jury because defendant is not charged with identity theft regarding J.B. Id. In turn, the government contends that defendant's request to have his aliases stricken from the first superseding indictment as surplusage is baseless. Dkt. 132 at 5. The government argues that the Court has discretion to strike surplusage, but evidence that is material and relevant to the charge—even if prejudicial—must remain. Id. Because the aliases in the first superseding indictment are all "highly relevant" to the charges, the government asserts that the Court cannot strike them from the first superseding indictment. Id. at 5–6.

The Court finds that, insofar as the aliases "Kevin Brown," "M.W.," and "J.B." are relevant to the charges listed in the first superseding indictment, the references are permissible as they only represent what the government expects to be able to prove at trial. The indictment is not evidence, and the Court will so instruct the jury. See 9th Cir. Model Crim. Jury Instruction 1.2 ("The indictment simply describes the charge[s] the government brings against the defendant. The indictment is not evidence and does not prove anything.") Moreover, the Court finds that the inclusion of "Kevin Brown" is relevant insofar as "Kevin" is defendant's middle name that he allegedly uses with his friends and family, and the government will introduce evidence that defendant used this name in order to connect him with exhibits in which he signed his name as "Kevin." Similarly, M.W. and J.B. are relevant and material to counts one, three, four, and five insofar as they relate to defendant's alleged use of M.W. to undertake the alleged drug-trafficking conspiracy and identity theft crimes. Accordingly, defendant's motion is **DENIED** and the aliases shall remain in the first superseding indictment.

## D. Reconsideration of the Court's August 7, 2017 Order on Defendant's Motion to Exclude Cell Site Tracking Evidence and Testimony

Defendant requests that the Court reconsider its August 7, 2017 order denying defendant's motion to suppress historical cell site location information ("CSLI") and its tainted fruits in light of the subsequent oral argument of the salient issue before the Supreme Court in Carpenter v. United States, No. 16-402, and what it suggests about the Supreme Court's anticipated opinion. Dkt. 119 at 2. In the Court's prior order, the Court found that the government acted in good faith in seeking an order to obtain the CSLI without making a showing of probable cause. Id. at 4. Defendant asserts that reports from the November 29, 2017 oral argument suggest the likelihood of a defense ruling—and if the Supreme Court does rule in favor of the defense in that case, this Court's "good faith" finding would become critical. Id.

Defendant asks the Court for two rulings: first, that the government be directed to disclose to defendant, and *in camera* to the Court, the USABook provisions under which the government acted with respect to seeking CSLI without a warrant; and second, that the Court reconsider its finding of "good faith," since the government's ex parte application in March 2017 failed to inform the magistrate judge about the Supreme Court petition in <u>Carpenter</u> filed six months earlier. <u>Id.</u> at 5–6. With respect to the USABook's provisions regarding CSLI, defendant argues that based on the Ninth Circuit's analysis concerning a Freedom of Information Act Request ("FOIA") in <u>American Civil Liberties Union of Northern California v.</u> <u>U.S. Department of Justice</u>, No. 14-17339, 2018 WL 455857 (9th Cir. Jan. 18, 2018), the government cannot withhold certain portions of the manual on work product grounds. In particular, the Ninth Circuit held that sections of the USABook related to tracking devices and methods of non-wiretap electronic surveillance which consist of (1) technical information, and (2) general legal analyses, and (3) instructions to law enforcement about how to obtain court authorization about a suspect, including the type of authorization required, were not privileged from disclosure. <u>Id.</u> at 6. Defendant seeks disclosure of this information to determine whether the government in this case acted in good faith, or in knowing or reckless disregard of defendant's constitutional rights. <u>Id.</u> Defendant also requests that the Court conduct an *in camera* review of the portions of the USABook that address DOJ's legal theories and arguments regarding CSLI or related surveillance, or the DOJ's position on the types of authorization necessary to obtain CSLI. <u>Id.</u> These materials would enable the Court to more fully evaluate whether prosecutors' conduct was in good faith. <u>Id.</u> at 6–7. Regardless, defendant argues that the government's conduct was in disregard of defendant's Fourth Amendment rights insofar as it failed to disclose to the magistrate judge that the issue of whether a search warrant is required for CSLI was undecided in the Ninth Circuit and that there was a 2016 petition for certiorari in <u>Carpenter</u>. <u>Id.</u> at 7–8.

In opposition, the government argues that defendant identifies no actual change in fact or law to support his motion, and neither does he suggest that the Court failed to consider material facts or law presented to the Court in his original motion as required by Local Rule 7–18. Dkt. 133 at 1. The "likely" change in the law that defendant argues will result from <u>Carpenter</u> is *not* a change in the law, and thus the oral argument in <u>Carpenter</u> does not merit reconsideration of the Court's order denying defendant's motion to suppress. <u>Id.</u> at 2. Moreover, the government argues that the Court's prior order was based on the good faith exception to the exclusionary rule, which is not at issue in <u>Carpenter</u>. <u>Id.</u> at 2–3. The government requests that the Court deny defendant's motion.

Local Rule 7–18 sets forth the grounds upon which the Court may reconsider the decision on any motion:

A motion for reconsideration of the decision on any motion may be made only on the grounds of: (a) a material difference in fact or law from that presented to the

Court before such decision that in the exercise of reasonable diligence could not have been known to the party moving for reconsideration at the time of such decision, or (b) the emergence of new material facts or a change of law occurring after the time of such decision, or (c) a manifest showing of a failure to consider material facts presented to the Court before such decision.  No motion for reconsideration shall in any manner repeat any oral or written argument made in support of or in opposition to the original motion.

C.D. Cal. L.R. 7–18.  Defendant argues that the recent Ninth Circuit case, <u>American Civil Liberties Union of Northern California v. United States Department of Justice</u>, provides a basis for the Court to reconsider its "good faith" finding.  In that case, the Ninth Circuit considered whether the Department of Justice ("DOJ") properly withheld certain portions of the USABook as attorney work product in response to a FOIA request.  <u>See</u> <u>American Civil Liberties Union of Northern California</u>, 2018 WL 455857.  As relevant here, the USABook is an internal DOJ resource manual for federal prosecutors that addresses, among other matters, the use of electronic surveillance and tracking devices.  <u>See</u> <u>American Civil Liberties Union of Northern California</u>, 2018 WL 455857, at *4.  The portion of the USABook entitled "Tracking Device Manual" consists of a narrative section and an appendix containing sample affidavits, warrants, and court orders regarding authorization to obtain cellular phone location data.  <u>Id.</u>  This section "[p]rovides guidance to federal prosecutors/case agents re[garding] electronic surveillance and tracking devices.  [T]he [t]ext covers the following: Preface; Roadmap/FAQs; Part 1.— Obtaining Location Information from Wireless Carriers; Part II: Mobile Tracking Devices; Part III: Telematics Providers (OnStar, etc.); Appendix."  <u>Id.</u> at *6.  The Ninth Circuit, based on its *in camera* review of withheld portions of the USABook, observed that the "Tracking Device Manual" contains three distinct types of information: (1) technical information about electronic surveillance technologies; (2) considerations related to seeking court authorization for obtaining location information; and (3) legal background and arguments related to motions to suppress location information in later criminal prosecutions.  <u>Id.</u> at *7.

With respect to the portion concerning court authorization for location information, the Ninth Circuit noted that two types of material were at issue: (1) instructions and guidance to federal investigators and prosecutors regarding the type of court authorization they can pursue to obtain particular types of electronic surveillance information, and (2) legal arguments in support of this authorization.  <u>Id.</u>  The Ninth Circuit held that the former material concerning instructions and guidance did not constitute attorney work product, while the latter portion concerning specific legal arguments did constitute attorney work product and was thus privileged from disclosure.  <u>Id.</u> at *8.  The government argues that the Ninth Circuit's holding does not compel the disclosure of the USABook provisions regarding CSLI in this case, given that Rule 16 controls discovery here and not FOIA.  Dkt. 133 at 4, n.3.

The Court invited the parties to provide oral argument as to the applicability of <u>American Civil Liberties Union of Northern California v. United States Department of Justice</u> to the instant motion, and whether the Ninth Circuit's holding represents either a change of law or a material difference in law from that presented to the Court at the time of its August 7, 2017 order of which defendant could not have known. At oral argument, defense counsel recounted that the applicable USABook provisions are relevant to whether the prior prosecutor on the case did not follow the requisite procedures. In turn, counsel for the government argued that the Ninth Circuit's holding specifically pertained to disclosure under FOIA and not Rule 16 governing the disclosure in the instant criminal action. The Court hereby requests that the government produce, *in camera*, any pages relevant to the appropriate procedures to be followed in connection with seeking court authorization for obtaining historical cell site location information without a warrant. Subject to the Court's *in camera* review, the Court **DENIES** defendant's motion to reconsider its August 7, 2017 order.

## III.       GOVERNMENT'S MOTIONS IN LIMINE

### A.       Admissibility of Defendant's Prior Acts

The government intends to introduce evidence that defendant stole and used the identity of J.B., that defendant was in the United States illegally, and that defendant was arrested for and later convicted of illegally reentering the United States in violation of 8 U.S.C. § 1326. Dkt. 122 at 3. For the reasons identified above in the Court's analysis, the Court **DENIES** the government's motion to admit the evidence regarding defendant's illegal presence in the United States during the period alleged in the indictment; his attempt to enter the United States on a panga boat; and his subsequent conviction for illegal reentry. The Court **GRANTS** the government's request to admit evidence regarding defendant's use of identification documents in the name of J.B.

### B.       Exclusion of Defendant's Alibi Defense

The government asserts that, on April 10, 2017, it sent defendant two letters requesting written notice of "any intended alibi defense for any overt acts in furtherance of the drug conspiracy in which your client is charged." Dkt. 123 at 1. The government's first letter requests notice of an alibi defense for eight flights between LAX and JFK between October 24, 2015 and March 18, 2016; two additional flights from JFK to Miami, and from Miami to Jamaica, on March 23, 2016; defendant's presence on March 18, 2016 in Los Angeles; and defendant's presence on March 21, 2016 in the Bronx, New York. Id. at 2. The government's second written notice on April 10, 2017 specified six additional flights that defendant took between LAX and JFK during the same time period, and the government again specified the date, flight number, airline, and itinerary of each flight. Id. Defendant failed to respond and did not provide any notification of his intent to raise an alibi defense at trial. Id.

In his opposition, defendant makes clear that he does not intend to raise an alibi defense. Dkt. 130 at 3. Accordingly, the Court **GRANTS** the government's motion to exclude evidence of an alibi defense at trial with respect to the particular times and locations set forth in the government's April 10, 2017 letters to defendant.

## C.    Admissibility of Defendant's Jail Calls and Exclusion of Hearsay

The government recounts that, since defendant's arrest in April 2016, he has remained in custody and has placed calls to his family, friends, and associates using the Bureau of Prisons ("BOP") recorded communications system. Dkt. 124 at 2. The government has obtained many of these recorded communications, which are primarily in Patois—the national language of Jamaica—and it has summarized these conversations in English, or translated them verbatim into English, and produced these transcripts to defense. Id. at 2–3. The government contends that, insofar as it intends to introduce evidence of six recorded jail calls made by defendant, these recorded statements are not hearsay because they are party admissions admissible under Federal Rule of Evidence 801(d)(2)(A). Id. at 3. Moreover, the government argues that statements made by other individuals on the calls are not hearsay because they are admitted for context and not for the truth of the matter asserted. Id. (citing United States v. Whitman, 771 F.2d 1348, 1352 (9th Cir. 1985)). The government further argues that the admission of non-hearsay statements generally does not violate the Confrontation Clause, and thus it may properly introduce defendant's recorded calls in its case-in-chief. Id. (citing Tennessee v. Street, 471 U.S. 409, 414 (1985)).

The government asserts that each of the six recorded calls is relevant to a material issue at trial. Id. In one call, defendant states that his email address is "gk.brown77@yahoo.com," and the government intends to introduce emails sent to and from that email address under the name M.W. as evidence of defendant's identity theft crimes. Id. In the other telephone calls, the government contends that defendant speaks in "parables" and discusses the details of his case using coded language. Id. at 4. The government argues that these telephone calls occurred the same day or the day after Reynolds pleaded guilty on December 12, 2016, and that defendant's coded discussions about Reynolds and the evidence against him are probative evidence of defendant's knowledge and consciousness of guilt. Id.

Moreover, the government notes that some of the excerpts from the calls include references to the fact that defendant was in custody at the time the calls were made, and it argues that these references are necessary to provide context for the calls, why defendant was speaking in "parables," and why the government recorded calls from him. Id. at 4. The government contends that the Ninth Circuit has approved of references to a criminal defendant's pretrial incarceration during trial where there is a "state purpose for the reference to incarceration." Id. (citing United States v. Washington, 462 F.3d 1124, 1137 (9th Cir. 2006)). The government argues that mere references to a defendant's incarceration during trial may be

permissible where there is an "obvious and relevant reason" for the reference. Id. at 5 (citing Hernandez v. Kramer, No. 08-c-2539 JSW (PR), 2009 WL 4980482, at *15 (N.D. Cal. Dec. 15, 2009)). Consequently, the government requests that the Court permit it to introduce portions of the recorded calls indicating that defendant was a federal inmate at the time the calls were made because this information provides "context" for the calls. Id.

Last, the government argues that defendant is not entitled to elicit his own prior statements from government witnesses under Rule 801(d)(2)(A). Id. at 5 (citing United States v. Collicott, 92 F.3d 973, 983 (9th Cir. 1996); United States v. Ortega, 203 F.3d 675, 682 (9th Cir. 2000); United States v. Lopez-Figueroa, 316 F. App'x 548, 550 (9th Cir. 2008)). The government contends that only on rare occasions may a defendant introduce additional portions of a call under Rule 106, the "rule of completeness." Id. at 6. Yet the government asserts that this rule only applies when the government has played a portion of a recording and "misunderstanding or distortion can be averted only through presentation of another portion" of the recording. Id. (quoting Beech Aircraft Corp. v. Rainey, 488 U.S. 153, 172 (1988)). Even if a recorded statement satisfies Rule 106, it still must fall within a recognized exception to the rule against hearsay. Id. at 7 (citing Ortega, 203 F.3d at 682; Lopez-Figueroa, 316 F. App'x at 549-50). Because the portions of defendant's recorded calls do not present a risk of misunderstanding or distortion without playing other portions of the same calls, the government requests the Court to exclude defendant from introducing other portions of the same calls. Id.

In opposition, defendant notes that he was housed in a BOP facility after sentencing for his illegal re-entry conviction. Dkt. 131 at 3. He recounts that the calls in questions were made on May 20, 2016; June 2, 2016; three calls on December 12, 2016; and a call on December 13, 2016. Id. Defendant explains that, on March 21, 2016, the media published articles about the abandoned cocaine at issue in the case as well as Reynold's conduct, which attracted dozens of commentators and a great deal of media attention. Id. On May 3, 2016, Assistant United States Attorney Reema El-Amamy began interviewing Reynolds. On December 12, 2016, Reynolds pleaded guilty. Id.

Defendant argues that El-Amamy "aggressively recruited [defendant's] cooperation, through her communications with his counsel," who were, at the time, John Mitchell and Neal Sonnett. Id. at 3–4. Through his counsel, defendant refused to cooperate, and El-Amamy warned defense counsel that the government may seek to add charges related to identity theft to the cocaine conspiracy they were investigating. Id. at 4. Defendant argues that, given the context for the telephone calls that the government seeks to admit, it is "ridiculous for the government to take the position that [defendant's] knowledge of [Reynold's] cooperation demonstrates consciousness of guilt." Id. at 5. Defendant further argues that the subject of the telephone calls—his "legal situation" and "refusal to cooperate with the government"—relates directly to attorney-client communications regarding plea negotiations, and that ordinarily, plea negotiations are inadmissible under Federal Rule of Evidence 410 and Federal Rule of Civil

Procedure 11(e)(6).  Id. at 5.  Defendant asserts that the telephone calls that the government seeks to admit demonstrate that he denied guilt, refused to cooperate, and demanded that if the government claimed to have evidence against him, that they file charges and bring in witnesses to prove it.  Id.  Moreover, defendant contends that permitting the government to bring in evidence of his custody status in the telephone calls would only serve to prejudice the jury against him.  Id. at 6.

Last, defendant argues that the Court should exercise its discretion under Rule 403 to exclude these telephone calls because the calls imply that his refusal to cooperate with the government indicates guilt; the proffered discussions are reiterations of his consultations with counsel; they mislead the jury into imputing a nefarious motive for his refusal to cooperate; and they will require undue delay during trial on an irrelevant side issue.  Id. at 6–7.  If the Court permits the government to introduce these conversations, defendant argues that he will need considerable time and resources to provide the context of these conversations.  Id. at 7.  Namely, defendant will have to demonstrate the government's "aggressive pressure" on him to participate in its investigation, which would deflect the jury's attention from its main purpose of determining whether the government has carried its burden of proof.  Id.  Defendant argues that his multiple references in the calls to "my mouthpiece" and "John" are both references to his attorney.  Id. at 8.  Moreover, defendant argues that because the government only recently committed to which conversations it might seek to introduce, defendant is at a disadvantage in addressing the evidence insofar as he will need to request out-of-district subpoenas for records and the attendance of his attorneys, in addition to seeking an order compelling his attorneys to provide records of their attorney-client communications.  Id. at 8–9.  Therefore, defendant requests that the Court exclude the telephone calls at trial.

The Court invited the government to provide the precise significance of the proffered telephone calls at oral argument.  At the hearing, the government indicated that it discussed a stipulation with defendant in regards to defendant's email address, and that if the parties can reach a stipulation as to this issue, the government will not offer the jail calls that are the subject of the instant motion.  Subject to the parties' stipulation with respect to the June 2, 2016 call discussing defendant's email address, after reviewing the transcripts the Court finds that the remaining five telephone conversations are likely to mislead the jury and cause delay insofar as their significance is unclear and because defendant speaks in "parables."  This likelihood of jury confusion and undue delay substantially outweighs any probative value they may have.  Accordingly, the Court **DENIES** the government's motion to admit defendant's jail calls and orders that these telephone calls be excluded at trial pursuant to the Court's discretion under Rule 403.

**D.** **Admissibility of Business Records Under the Self-Authentication Provision of FRE 902(11)**

The government seeks to introduce certain business records at trial under the self-authentication provision of FRE 902(11). Dkt. 125 at 1. In particular, the government seeks to introduce business records from the custodians of records of the following entities: American Airlines; American Express; AT&T Wireless; Bankcorp Bank/NetSpend; Bureau of Prisons; Citibank; EAN Holdings LLC; Hirshleifer's Inc.; JetBlue; La Quinta Inn; Mental Health Associates; MoneyGram Records; T-Mobile US, Inc.; U.S. Department of State; Western Union; and Yahoo!. Id. at 3–4. The records include flight records, credit card records, telephone records, financial records, rental car records, shopping history, and client records. Defendant does not oppose the motion. Therefore, the government's motion with respect to the aforementioned records is **GRANTED**. The records subject to this motion are self-authenticating, and the government may introduce at trial summary exhibits of the flight, telephone, rental car, and bank records at issue.

## IV.   CONCLUSION

In accordance with the foregoing, the Court **DENIES** defendant's motion to exclude proffered expert Steve Paris.

The Court **DENIES** defendant's motion to compel disclosure of alleged co-conspirators known to the prosecution.

The Court **DENIES** in part and **GRANTS** in part defendant's motion to exclude evidence of other acts and **DENIES** defendant's request to strike aliases from the first superseding indictment.

The Court **DENIES** defendant's motion to reconsider the Court's prior order on admissibility of cell site tracking evidence.

The Court **DENIES** in part and **GRANTS** in part the government's motion to admit evidence of defendant's other acts.

The Court **GRANTS** the government's motion to exclude evidence of an alibi defense.

The Court **DENIES** the government's motion to admit defendant's jail calls and to exclude hearsay.

The Court **GRANTS** the government's motion to admit business records.

IT IS SO ORDERED.

00:40

CMJ