# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CRIMINAL MINUTES – GENERAL   'O'

| Case No. | 2:17-CR-0047(A)-CAS | Date | August 5, 2019 |
|---|---|---|---|
| Present: The Honorable | CHRISTINA A. SNYDER | | |
| Interpreter | N/A | | |

| Catherine Jeang | Laura Elias | Alexander Wyman |
|---|---|---|
| *Deputy Clerk* | *Court Reporter / Recorder, Tape No.* | *Assistant U.S. Attorneys* |

| U.S.A. v. Defendant(s): | Present | Cust. | Bond | Attorneys for Defendants: | Present | App. | Ret. |
|---|---|---|---|---|---|---|---|
| GASTON BROWN | X | X | | HUMBERTO DIAZ | X | | X |

**Proceedings:** DEFENDANT GASTON BROWN'S MOTION FOR JUDGMENT OF ACQUITTAL OR, IN THE ALTERNATIVE, A NEW TRIAL (Dkt. [ 167 ], filed June 28, 2018)

## I.   INTRODUCTION AND BACKGROUND

On January 26, 2017, a federal grand jury indicted defendant Gaston Brown, charging him with one count of conspiracy to possess with intent to distribute and to distribute cocaine and one count of possession with intent to distribute cocaine.  Dkt. 1.  On September 29, 2017, the government filed a superseding indictment, charging defendant with (1) one count of conspiracy with intent to distribute and to distribute cocaine in violation of 21 U.S.C. § 846; (2) one count of possession with intent to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(ii); (3) one count of unlawful transfer, possession, and use of a means of identification in violation of 18 U.S.C. §§ 1028(a)(7), (b)(3)(A); (4) one count of use of a counterfeit access device in violation of 18 U.S.C. § 1029(a)(1); and (5) aggravated identity theft in violation of 18 U.S.C. § 1028A(a)(1).  Dkt. 87.  The government alleges that defendant conspired with Marsha Gay Reynolds, a flight attendant, to transport cocaine from Los Angeles International Airport ("LAX") to John F. Kennedy International Airport ("JFK") in New York, and that he accomplished the alleged crimes by using the stolen identity of M.W., a mentally disabled man from Massachusetts.  See generally id.

A jury trial was held on February 13, 14, 15, and 16, 2018.  Dkts. 149, 150, 155, 159.  On February 16, 2018, the trial came to a close and the jury returned a special verdict.  Dkt. 159; 163.  The jury found defendant guilty of all five counts charged against him.  Dkt. 163.

On June 28, 2018, defendant filed a renewed motion to dismiss and/or motion for a new trial. Dkt. 167 ("Mot."). The government filed an opposition on July 6, 2018. Dkt. 168 ("Opp'n"). With leave of Court, defendant filed a supplement to his motion on July 22, 2019, dkt. 203 ("Supp."), and the government filed a sur-reply on July 26, 2019, dkt. 206 ("Sur Reply"). On August 2, 2019, defendant filed an additional supplemental reply. Dkt. 207 ("Supp. Reply").

The Court held a hearing on August 5, 2019. Having carefully considered the parties' arguments, the Court finds and concludes as follows.

## II. LEGAL STANDARD

### A. Motion for Acquittal Under Federal Rule of Criminal Procedure 29

Federal Rule of Criminal Procedure 29 provides that "the court may set aside the verdict and enter an acquittal." Fed. R. Crim. P. 29(c). Courts reviewing a motion for judgment of acquittal under Rule 29(c) apply the same test as a challenge to the sufficiency of the evidence. United States v. Ladum, 141 F.3d 1328, 1337 (9th Cir. 1998). When considering a motion for judgment of acquittal, the Court must determine whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." United States v. Hursh, 217 F.3d. 761, 767 (9th Cir. 2000). This is a two-step process: "First, a reviewing court must consider the evidence presented at trial in the light most favorable to the prosecution." United States v. Nevils, 598 F.3d 1158, 1164 (9th Cir. 2010) (en banc). "Second, after viewing the evidence in the light most favorable to the prosecution, the reviewing court must determine whether this evidence, so viewed, is adequate to allow 'any rational trier of fact [to find] the essential elements of the crime beyond a reasonable doubt.'" Id. (quoting Jackson v. Virginia, 443 U.S. 307, 318–19 (1979)). "The hurdle to overturn a jury's conviction based on a sufficiency of the evidence challenge is high." United States v. Rocha, 598 F.3d 1144, 1153 (9th Cir. 2010). "[A]ny conflicts in the evidence are to be resolved in favor of the jury's verdict." United States v. Alvarez-Valenzuela, 231 F.3d 1198, 1201-02 (9th Cir. 2000).

### B. Motion for New Trial Under Federal Rule of Criminal Procedure 33

Federal Rule of Criminal Procedure 33 provides that "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). "A district court's power to grant a motion for a new trial is much broader than its power to grant a motion for judgment of acquittal." United States v. A. Lanoy Alston, D.M.D., P.C., 974 F.2d 1206, 1211 (9th Cir. 1992). "The court is not obliged to view the evidence in the light most favorable to the verdict, and it is free to weigh the evidence and evaluate for itself the credibility of the witnesses." United States v. Kellington, 217 F.3d 1084,

1097 (9th Cir. 2000) (citing United States v. Alston, 974 F.2d 1206, 1211 (9th Cir. 1992)). A motion for a new trial is "directed to the discretion of the district judge" and "should be granted only in exceptional cases in which the evidence preponderates heavily against the verdict." United States v. Pimentel, 654 F.2d 538, 545 (9th Cir. 1981).

### III. DISCUSSION

Defendant's motion for a new trial is premised on the government's introduction of historical cell site location information ("CSLI") at trial. The government filed, and the Court granted, an ex parte application for an order authorizing AT&T to disclose to the government the historical CSLI for two cell phone numbers that the FBI believed were used by defendant and Reynolds to further their conspiracy on March 8, 2017. Dkt. 41, Ex. B ("CSLI Application and Order"). The government sought such an order pursuant to the Stored Communications Act ("SCA"), which authorizes a court to compel, *inter alia*, an electronic communications service to disclose the records of its customers "if the governmental entity offers specific and articulable facts showing that there are reasonable grounds to believe that the contents of a wire or electronic communication, or the records or other information sought, are relevant and material to an ongoing criminal investigation." 18 U.S.C. § 2703(d). At trial, the government introduced this CSLI to demonstrate that defendant was near and around LAX on March 18, 2016, the night that police seized nearly 70 pounds of cocaine from a suitcase carried by Reynolds as she passed through security. Reynolds testified that defendant gave her the suitcase and drove her to LAX on that evening, and that she was transporting the suitcase for defendant, without knowledge that it contained cocaine. Supp., Ex. B at 35:9–43:12; 49:12–51:8.

Defendant now argues that acquittal or, in the alternative, a new trial is warranted under the Federal Rules of Criminal Procedure because the government's introduction of defendant's cell phone records and historical CSLI violated the Fourth Amendment, pursuant to the Supreme Court's recent decision in Carpenter v. United States, 138 S. Ct. 2206 (2018). Supp. at 8. In that decision, the Supreme Court held that to obtain CSLI, law enforcement must acquire a warrant based on probable cause, and because court orders under § 2703(d) of the SCA "[fell] well short of the probable cause required for a warrant," they could not authorize a constitutional search. Carpenter, 138 S. Ct. at 2221. Law enforcement relied on a § 2703(d) order in this case, and defendant therefore argues that the CSLI evidence should have been excluded. He further argues that the introduction of this evidence was not harmless because the government offered the evidence to corroborate Reynolds' testimony, defendant's co-conspirator who agreed to cooperate with the government in accordance with a plea agreement, and whose credibility was placed in question at trial. Id. at 13, 22. In response, the government argues that the CSLI was admissible under the good faith exception to the exclusionary rule. Sur Reply at 2. It also argues that defendant's request for acquittal or for a new trial should be

denied because the government presented sufficient evidence to support each element of every crime.  Opp'n at 3.

    A.    **The Admission of the CSLI Evidence**

In advance of trial, when the Supreme Court had granted certiorari in <u>Carpenter v. United States</u>, 137 S. Ct. 2211 (2017), but had not yet ruled on the constitutionality of searches conducted pursuant to court orders under § 2703(d) of the SCA, defendant moved to suppress the CSLI under the Fourth Amendment.  Dkt. 41.  The Court denied defendant's motion, concluding that even if the Fourth Amendment protected the historical CSLI at issue in this case, the evidence was admissible under the good faith exception to the exclusionary rule because the exclusionary rule does not apply when officers act in "objectively reasonable reliance on a statute[,]" unless the statute is "clearly unconstitutional[.]"  Dkt. 62 (quoting <u>Illinois v. Krull</u>, 480 U.S. 340, 349–50 (1987)) (explaining that "unless a statute is clearly unconstitutional, an officer cannot be expected to question the judgment of the legislature that passed the law").

Notwithstanding the Supreme Court's decision in <u>Carpenter</u>—which was handed down on June 22, 2018, four months after trial ended in this case— the Court still finds that the good faith exception to the exclusionary rule applies to the CSLI introduced at trial.  The Ninth Circuit has held that "that CSLI acquired pre-<u>Carpenter</u> is admissible—so long as the Government satisfied the SCA's then-lawful requirements—under <u>Krull</u>'s good-faith exception."  <u>United States v. Korte</u>, 918 F.3d 750, 759 (9th Cir. 2019).  For this reason, in <u>Korte</u>, the Ninth Circuit affirmed a district court's conclusion that CSLI acquired pursuant to a § 2703(d) order was admissible because it was acquired before <u>Carpenter</u> was handed down.

In his moving papers, defendant does not cite <u>Korte</u>, and the Court previously found that the government satisfied the SCA's then-lawful requirements when it applied for an order under § 2703(d).  <u>See</u> Dkt. 62 at 8.  However, defendant argues that the good faith exception is not supported in this case because an "experienced prosecutor" processed the CSLI application, because law enforcement could have applied for a warrant, and because the case law "counseled against the practice."  Supp. at 12.  The Court disagrees.  As the Ninth Circuit reasoned in <u>Korte</u>, "[a]ny defect in the [SCA] . . . was not sufficiently obvious so as to render [the Government's] reliance upon the statute objectively unreasonable," as "[t]he Supreme Court's own sharply divided opinion in <u>Carpenter</u>" demonstrates.  <u>Id.</u> at 758–59 (internal quotations and citations omitted).  In addition, even if law enforcement could have requested a warrant, it was common practice to obtain CSLI pursuant to § 2703(d) of the SCA, and the courts of appeals who reviewed the constitutionality of this issue unanimously upheld the practice.  <u>See</u> <u>United States v. Graham</u>, 824 F.3d 421, 424 (4th Cir. 2016) (en banc); <u>United States v. Carpenter</u>, 819 F.3d 880, 884 (6th Cir. 2016); <u>United States v. Davis</u>, 785 F.3d 498, 511 (11th Cir. 2015) (en

banc); In re Application of the U.S. for Historical Cell Site Data, 724 F.3d 600, 615 (5th Cir. 2013); In re Application of the U.S. for an Order Directing a Provider of Elec. Commc'n Serv. to Disclose Records to the Gov't, 620 F.3d 304, 313 (3d Cir. 2010).[1] Even if an experienced prosecutor oversaw this case, the Court still does not find that he would have "had any reason to doubt the SCA's constitutionality, such that [the government] may have been acting in bad faith." Korte, 918 F.3d at 758. On March 8, 2017, when the government filed its application to obtain CSLI under § 2703(d), the Supreme Court had not yet granted certiorari in Carpenter; certiorari was granted on June 5, 2017. Importantly, too, defendant cites no case in which a court declined to apply the good faith exception in comparable circumstances, and the Court is aware of none.

Accordingly, in light of the Ninth Circuit's holding in Korte, the Court finds that the good faith exception to the exclusionary rule applies in this case, and therefore the CSLI evidence was lawfully admitted into evidence.

### B.     Defendant's Motion for Judgment of Acquittal

Viewing the evidence in the light most favorable to the prosecution, in this case the "evidence, so viewed, is adequate to allow 'any rational trier of fact [to find] the essential elements of the crime beyond a reasonable doubt,'" and the Court therefore denies defendant's motion for judgment of acquittal. Nevils, 598 F.3d at 1164. Along with the CSLI, numerous other pieces of evidence supported the jury's verdict. First, defendant's co-conspirator, Reynolds, testified about defendant's role in providing her with the suitcase to carry through airport security, organizing her numerous trips, driving her to the airport, and instructing her to "run" when security officers notified Reynolds that they wanted to search the suitcase. See Tr. 02/14/18, at 35:9–43:12; 44:5–45:3. She also testified to the beginning of their relationship and to their history of working together to carry money from California to New York. Id. at 16:13–19:12.[2] The government also produced a falsified drivers' license and passport, both presenting

---

[1]     In a supplemental reply, filed on August 2, 2019, defendant contends that this case is distinguishable from Korte because the government filed its application for defendant's CLSI after the petition for certiorari in Carpenter was filed, at a time when there was a circuit split. Supp. Reply at 4. However, defendant is incorrect: all courts of appeals who addressed this issue held that no Fourth Amendment violation occurred when the government acquired CLSI pursuant to an SCA order.

[2]     Although Reynolds' testimony of what occurred on March 18, 2016, differed at times from the account she provided during her initial proffer sessions, defense counsel cross-examined her thoroughly at trial, and the Court concludes, as it must at this stage, that the jury ultimately found her testimony sufficiently credible. See United States v. H.B., 695 F.3d 931,

defendant's photograph, but with the names of individuals with mental health disorders which prevented them from traveling, opening credit cards, and the like. See, e.g., Trial Ex. 3; Tr. 02/15/18, at 14:14–15: 5; Trial Ex. 7; Tr. 02/15/18, at 25:20–26:8. The government further provided flight records, evidencing that defendant and Reynolds flew multiple times prior to the March 18, 2016, incident alleged in the indictment. Finally, the government produced the nearly 70 pounds of cocaine that airport security discovered in the suitcase which Reynolds carried and abandoned on March 18, 2016, see Trial Ex. 176, and it provided video images, captured by security cameras at LAX, which showed defendant driving up to the curb at LAX and lifting the suitcase from the trunk of a van which defendant had rented under a false identity, see Trial Ex. 120; Tr. 02/14/18, at 42:09–24. This evidence was legally sufficient to permit the jury to convict under each of the five counts alleged. Defendant's motion for judgment of acquittal is therefore **DENIED**.

### C. Defendant's Motion for a New Trial

Weighing the evidence, the Court also concludes that a new trial is not warranted in this case because it is not an "exceptional case[] in which the evidence preponderates heavily against the verdict." Pimentel, 654 F.2d at 545. To the contrary, as discussed above, the evidence supported the jury's verdict. Defendant identifies no other injustice would which would require a new trial.[3] Accordingly, defendant's motion for a new trial is **DENIED**.

/ / /

/ / /

/ / /

---

935 (9th Cir. 2012) (affirming a conviction and explaining that "in a case involving factual disputes and credibility determinations, a court "must presume . . . that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution").

[3] Defendant also alleges that a Brady violation may have occurred with regard to information about "Junior," an alleged unindicted co-conspirator in this case, who Reynolds referenced in her testimony and in her proffer sessions. Supp. at 18, n.5, 21, n.6; Supp. Reply at 3. Defendant further states that he "has renewed his request for any and all discovery regarding 'Junior,' as relevant in this case." Supp. at 18, n.5; see also Supp. Reply, Ex. A. However, defendant has produced no evidence to substantiate the alleged Brady violation, and at oral argument, the government responded that it has produced all discovery related to Junior. Based on the record before it, the Court therefore **DENIES** a new trial on this ground.

## IV. CONCLUSION

In accordance with the foregoing, the Court **DENIES** defendant's motion for judgment of acquittal and defendant's motion for a new trial.

IT IS SO ORDERED.

|  |  |
|---|---|
| Initials of Deputy Clerk | 00 : 14 <br> CMJ |

**Cc:**     **U.S. Probation**