LAW OFFICES OF HUMBERTO DIAZ
HUMBERTO DIAZ (No 157692)
(E-mail: JHDiazLaw@gmail.com)
714 West Olympic Blvd., Suite 450
Los Angeles, CA 90015
Telephone (213) 745-7477
Facsimile (213) 745-7447

Attorneys for Defendant
GASTON BROWN

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>   v.<br><br>GASTON BROWN,<br><br>        Defendant. | NO. CR-17-0047-CAS-1<br><br>DEFENDANT'S SUPPLEMENTAL SENTENCING FILING RE: IMPROPER USE OF OLD MARIHUANA PRIOR CONVICTIONS TO ENHANCE DEFENDANT'S SENTENCE<br><br><br>Hearing Date: June 1, 2020<br>Hearing Time: 1:30 p.m. |

    Defendant Gaston Brown, through counsel, hereby files the present supplemental filing regarding defendant's old Arizona marihuana convictions. The defense contends that Mr. Brown's prior Arizona marihuana convictions do not categorically qualify as a generic "controlled substance offenses" under § 4B1.2(b) because those offenses could have been

committed with a plant that was not a federally controlled substance under the Guidelines presently in effect.

                                                      Respectfully submitted,

DATED: May 25, 2020           By: */s/ Humberto Diaz*
                                                 HUMBERTO DIAZ

A. MR. BROWN'S PRIOR ARIZONA MARIHUANA CONVICTIONS DO NOT CATEGORICALLY QUALIFY AS A GENERIC "CONTROLLED SUBSTANCE OFFENSE" UNDER U.S.S.G. § 4B1.2 BECAUSE ARIZONA BROADLY PENALIZED HEMP AS MARIHUANA AND FEDERAL LAW DOES NOT.

Mr. Brown has two prior convictions for marihuana that are almost 20 years old. PSR ¶¶ 69, 70. The Probation Office concludes that Mr. Brown's prior marihuana convictions, from 2001 and 2002 are "controlled substance offenses" under the Guidelines and therefore can be used to classify defendant as a "career offender" under the Guidelines, resulting in a dramatic increase in the calculated offense level. PSR ¶¶ 57 – 59. The defense contends that Mr. Brown's prior marihuana convictions in Arizona do not constitute "controlled substance offenses" under the Guideline definitions. Section 4B1.2(b) defines the term "controlled substance offense" as:

> an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense.

U.S.S.G. § 4B1.2(b) (2018). A categorical approach is employed in determining whether a prior conviction qualifies as a "controlled substance offense" under § 4B1.2(b). *United States v. Brown*, 879 F.3d 1043, 1047-48 (9th Cir. 2018). The *Brown* Court further held that the generic "controlled substance offense" in § 4B1.2(b) is defined by reference to federal law. 879 F.3d at 1047-48 (holding that a state drug conspiracy statute was

categorically overbroad because it encompassed conduct not punishable as conspiracy under federal law).

A state drug statute is categorically overbroad with respect to a recidivist Guidelines enhancement if it penalizes controlled substances other than those listed in the federal "Controlled Substances Act ["CSA"], 21 U.S.C. § 801 *et seq.*" *United States v. Martinez-Lopez*, 864 F.3d 1034, 1037 (9th Cir. 2017) (*en banc*) (citing *United States v. Leal-Vega*, 680 F.3d 1160, 1167 (9th Cir. 2012)). In *Leal-Vega*, the Court rejected the government's argument that the definition of a "controlled substance" in the definition of "drug trafficking offense" in former § 2L1.2, cmt. n.1(B)(iv) is dependent upon state law. *Leal- Vega*, 680 F.3d at 1166-67. The *Leal-Vega* Court held that "controlled substance" in the Guidelines must instead "mean[] those substances listed in the CSA," "in order to effectuate the goal set forth [by the Supreme Court and the Guidelines] of arriving at a national definition to permit uniform application of the Sentencing Guidelines." *Id.* at 1167; *accord United States v. Townsend*, 897 F.3d 66, 75 (2d Cir. 2018) (concluding that "controlled substance" in § 4B1.2(b) "refers exclusively to those substances in the CSA").

Therefore, a state drug statute is categorically overbroad with respect to § 4B1.2(b)'s definition of a "controlled substance offense" if it penalizes a broader list of controlled substances than those listed in the CSA's federal drug schedules.

//

4

## B. FEDERAL LAW AFTER 2018 DEFINES MARIHUANA TO EXCLUDE CANNABIS PLANTS WITH A THC CONCENTRATION OF 0.3 PERCENT OR LESS.

Hemp and marihuana are both cannabis sativa plants, but they "differ in the amount of the cannabinoid known as delta-9-tetrahydrocannabinol, or THC, they contain, with hemp containing insufficient THC—the principal psychoactive component of the cannabis plant—to produce the 'high' associated with the ingestion of marijuana." Michael D. Moberly, *Old Macdonald Hid A Farm: Examining Arizona's Prospects for Legalizing Industrial Hemp*, 20 DRAKE J. AGRIC. L. 361, 362-63 (2015) (footnotes omitted). The flowers of "industrial hemp plants . . . contain only a trace amount of the THC contained in marijuana varieties grown for psychoactive use." *Hemp Indus. Ass'n v. DEA*, 357 F.3d 1012, 1013 n.2 (9th Cir. 2004) ("*Hemp II*").

Before 2018, the Controlled Substances Act, 21 U.S.C. § 801 *et seq.*, did not differentiate between hemp and other cannabis plants. The Controlled Substances Act of 1970 banned cannabis of any kind by listing "Marihuana" and "Tetrahydrocannabinols" as Schedule I controlled substances and by defining marihuana without differentiating between cannabis sativa L. plants based on THC concentration. *See* Comprehensive Drug Abuse Prevention and Control Act of 1970, Pub. L. No. 91-513, § 202, 84 Stat. 1249 (1970) (schedule I(c)(10), (17)); 21U.S.C. § 812(c) (Schedule I(c)(10), (17)); 21 U.S.C. § 802(16) (2017). The 1970 act broadly defined "marihuana" to include "all parts of the plant Cannabis sativa L." except certain components such as mature stalks, fiber produced from the stalks, sterilized seeds, and oil from the seeds. 21 U.S.C. § 802(16) (2017).

5

This definition has been interpreted to mean that cannabis plants are marihuana regardless of THC concentration. *United States v. Traynor*, 990 F.2d 1153, 1159-60 (9th Cir. 1993), overruled on other grounds by *United States v. Johnson*, 256 F.3d 895 (9th Cir. 2001). The Court also specifically recognized that cannabis plants grown for industrial purposes and containing lower THC concentrations are marihuana within the meaning of the CSA; "The industrial hemp plant . . . falls under the definition of marijuana." *Hemp Indus. Ass'n v. DEA*, 333 F.3d 1082, 1085 n.2 (9th Cir. 2003) ("Hemp I"); *accord United States v. White Plume*, 447 F.3d 1067, 1070-73 (8th Cir. 2006) (holding that industrial hemp was marihuana under the CSA because "the CSA does not distinguish between marijuana and hemp in its regulation").

In 2014, Congress for the first time differentiated between cannabis plants based on THC concentration by distinguishing industrial hemp from marihuana. *See* Agriculture Act of 2014, Pub. L. 113-79, Title VII, § 7606, 128 Stat 649 (2014) (codified at 7 U.S.C. § 5940) ("2014 Farm Bill"). The 2014 Farm Bill authorized "an institution of higher education . . . or a State department of agriculture" to "grow or cultivate industrial hemp" for purposes of research, "[n]otwithstanding the Controlled Substances Act," if otherwise "allowed under the laws of the State" and "certified by, and registered with," the State. Id. § 7606(a)(1), (b)(1); 7 U.S.C. § 5940(a)(1), (b)(1). The new law defined "industrial hemp" for the first time as "the plant Cannabis sativa L. and any part of such plant, whether growing or not, with a delta-9 tetrahydrocannabinol [THC] concentration of not more than 0.3 percent on a dry weight basis." 7 U.S.C. § 5940(a)(2) (emphasis added). The

2014 Farm Bill, however, did not amend the definition of "marihuana" under the CSA or otherwise remove industrial hemp from the federal controlled substance schedules.

On December 20, 2018, the 2018 Farm Bill was signed into law, removing "hemp" from the federal schedule of controlled substances altogether. *See* Agriculture Improvement Act of 2018, Pub. L. 115-334, Title XII, § 12619(a), 132 Stat. 5018 (Dec. 20, 2018) ("2018 Farm Bill"). The 2018 Farm Bill amended the CSA's definition of "marihuana" in 21 U.S.C. § 802(16) to exclude all parts of the cannabis plant containing 0.3 percent or less of THC. Section 802(16) now defines "marihuana" as follows:

> (A) Subject to subparagraph (B), the term "marihuana" means all parts of the plant Cannabis sativa L., whether growing or not; the seeds thereof; the resin extracted from any part of such plant; and every compound, manufacture, salt, derivative, mixture, or preparation of such plant, its seeds or resin.
>
> (B) The term "marihuana" does not include—
>
> (i) hemp, as defined in section 1639o of Title 7; or
>
> (ii) the mature stalks of such plant, fiber produced from such stalks, oil or cake made from the seeds of such plant, any other compound, manufacture, salt, derivative, mixture, or preparation of such mature stalks (except the resin extracted therefrom), fiber, oil, or cake, or the sterilized seed of such plant which is incapable of germination.

21 U.S.C. § 802(16) (2019). The 2018 Farm Bill further defined "hemp" in new 7 U.S.C. § 1639o(1) as:

7

> the plant Cannabis sativa L. and any part of that plant, including the seeds thereof and all derivatives, extracts, cannabinoids, isomers, acids, salts, and salts of isomers, whether growing or not, *with a delta- 9 tetrahydrocannabinol concentration of not more than 0.3 percent* on a dry weight basis.

Pub. L. 115-334, Title X, § 10113 (adding 7 U.S.C. § 1639o) (emphasis added).

Thus, under the Guidelines in effect on the date of Brown's federal sentencing in 2019, the CSA did not penalize as marihuana a cannabis plant with a THC concentration of 0.3 percent or less. But Arizona law at the time of Brown's state marihuana convictions did so.

### C. ARIZONA LAW BROADLY DEFINED MARIHUANA TO INCLUDE ANY CANNABIS PLANT, REGARDLESS OF THC CONCENTRATION.

At the time of Brown's state convictions, Arizona did not distinguish hemp from marihuana; both were controlled substances under Arizona law. Since 1988, and at the time of Brown's 2001-2002 state offenses, Arizona defined "marihuana" in Arizona Revised Statutes § 13-3401 as:

> all parts of *any plant of the genus cannabis*, from which the resin has not been extracted, whether growing or not, and the seeds of such plant. Marijuana does not include the mature stalks of such plant or the sterilized seed of such plant which is incapable of germination.

Ariz. Rev. Stat. § 13-3401(19) (2001) (emphasis added). This definition, like the CSA's definition before the 2018 Farm Bill, does not distinguish between cannabis sativa L. plants by THC concentration. Nor does the

8

state's statutory exception include low-THC cannabis plants. Arizona cases recognize that this definition applies without regard to THC concentration. *See State v. Harris*, 322 P.3d 160, 160, 164 (Ariz. 2014) (stating that a person commits an offense of driving a vehicle with "any drug defined in § 13-3401 . . . in the person's body" if they have "any amount of THC" in the body) (emphasis added); *State v. Anderson*, 489 P.2d 722, 724-26 (Ariz. Ct. App. 1971) (holding that the state's pre-1981 drug definitions, which were substantially similar to those now in Ariz. Rev. Stat. § 13-3401, prohibited the growing of "plants of cannabis sativa L. . . . without distinction as to their content of active compounds").

Subsequent state legislation independently establishes that Arizona's definition of marihuana in 2001-2002 encompassed any cannabis plant, regardless of THC concentration. In 2019, Arizona enacted a pilot program to legalize the growth, cultivation, and marketing of "industrial hemp." 2018 Ariz. Sess. Laws, Ch. 287 (2d Reg. Sess.) (eff. June 1, 2019) (codified primarily at Ariz. Rev. Stat. §§ 3-311 to 3-320 and 13-3405(I)). The act for the first time differentiated under Arizona law between cannabis plants based on THC concentration, by defining "industrial hemp"—like the federal CSA after 2018—as "the plant cannabis sativa L. with a delta-9 tetrahydrocannabinol concentration of not more than three-tenths percent on a dry-weight basis." Ariz. Rev. Stat. § 3-311(7).

The 2019 act also amended § 13-3405, the statute under which Mr. Brown was convicted in 2001 and 2002, to provide that the criminal prohibition on the possession, use, production, sale, or transportation of marihuana "does not apply" to a person "who is licensed" under the state's

pilot program or whose commercial hemp activities "are authorized under federal law." Ariz. Rev. Stat. § 13-3405(I) (2019).

These recent enactments further establish that, at the time of Mr. Brown's state offenses, Arizona's definition of marihuana in § 13-3401, including under § 13-3405, did not differentiate between cannabis plants by THC concentration.

### D. MR. BROWN'S ARIZONA CONVICTIONS ARE OVERBROAD AND INDIVISIBLE.

Mr. Brown's Arizona convictions do not categorically qualify as a "controlled substance offense" under § 4B1.2 because the state statute is missing an element of the CSA's definition of marihuana. An Arizona factfinder in 2001 and 2002 did not have to determine whether the cannabis involved had a THC concentration of more than 0.3 percent. *See Descamps v. United States*, 570 U.S. 254, 276-77 (2013) (holding that a "conviction under [California's burglary] statute is never for generic burglary" because the statute "does not require breaking and entering," and thus "does not require the factfinder . . . to make that determination").

A definitional element of a crime must be considered under the categorical approach, regardless of which party would bear the burden of proof in a criminal prosecution. *United States v. Aguilera-Rios*, 769 F.3d 626, 635-36 (9th Cir. 2014). In *Aguilera-Rios*, a removable "firearms offense" under 8 U.S.C. § 1227(a)(2)(C) incorporated the definition of "firearm" in 18 U.S.C. § 921(a)(3), which exempts antique firearms by providing that "[s]uch term does not include an antique firearm." 18 U.S.C.

10

§ 921(a)(3). Because the California statute at issue did not exempt antique firearms, it was categorically overbroad. *Aguilera-Rios*, 769 F.3d at 637. Further, because it was missing a definitional element of the generic crime altogether, the conviction could never qualify. *Id.*

Similarly here, the federal definition of marihuana now exempts hemp, but Arizona's definition of marihuana in 2001 and 2002 did not. Because the categorical approach presumes "that the conviction 'rested upon [nothing] more than the least of th[e] acts' criminalized," *Aguilera-Rios*, 769 F.3d at 636 (citation omitted), the Court must presume that Brown's state conviction involved hemp, i.e., a cannabis sativa L. plant with a THC concentration of 0.3 percent or less. And because the Arizona statute is missing the CSA's definitional element of a THC concentration of more than 0.3 percent, it is indivisible. *See id.* ("Because the statute is missing an element of the[ ] generic crime[ ], our inquiry ends here—we do not undertake a modified categorical analysis.") (citation omitted).

In this Circuit, "[t]here are two ways to show 'a realistic probability' that a state statute exceeds the generic definition." *Lopez-Aguilar v. Barr*, 948 F.3d 1143, 1147 (9th Cir. 2020) (quoting *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007)). First, the Court has repeatedly held that where, as here, a state statute explicitly and on its face defines the crime more broadly than the generic definition, the defendant does not have to point to cases in which the state courts applied the statute in the non-generic manner. See, e.g., *Brown*, 879 F.3d at 1050 (holding that no legal imagination was required to find a realistic probability that the state would apply its statute to conduct that falls outside the generic definition of the

11

crime, because the "state statute explicitly define[d] [the] crime more broadly than the generic definition"); *United States v. Vidal*, 504 F.3d 1072, 1082 (9th Cir. 2007) (*en banc*) ("when '[t]he state statute's greater breadth is evident from its text,' a defendant may rely on the statutory language to establish the statute as overly inclusive") (citation omitted); *United States v. Grisel*, 488 F.3d 844, 850 (9th Cir. 2007) (*en banc*) (when "a state statute explicitly defines a crime more broadly than the generic definition, no 'legal imagination,' is required to hold that a realistic probability exists that the state will apply its statute" in a non-generic manner) (citation omitted), abrogated on other grounds by *United States v. Stitt*, 139 S. Ct. 399 (2018). "As long as the application of the statute's express text in the nongeneric manner is not a logical impossibility, the relative likelihood of application to nongeneric conduct is immaterial." *Lopez-Aguilar*, 948 F.3d at 1147.

Since 1988, Arizona has explicitly defined "marijuana" in § 13-3401(19) to encompass "any plant of the genus cannabis." Furthermore, other statutes enacted after Brown's state convictions in 2001 and 2002 make clear that Arizona applies that same statutory definition specifically to hemp. A statute setting forth violations of Arizona's 2019 pilot program to legalize hemp cultivation provides that the unlicensed transportation of industrial hemp remains punishable under § 13-3405, the statute under which Brown was convicted. The statute provides:

> A person who does not hold a license issued by the department or who is not a designee or agent of a person who holds a license issued by the department may not propagate, harvest, transport or process industrial hemp. A person who violates this subsection is subject to § 13-3405.

12

Ariz. Rev. Stat. § 3-319(C) (emphasis added).

Regulations implementing that same statute similarly provide that "[n]o unauthorized person shall . . . [g]row, cultivate, handle, store, harvest, transport, import or process industrial hemp," Ariz. Admin. Code § R3-4-1012(C)(1), and that "intentional or knowing violations" of the regulations "shall be punished according to A.R.S. §§ 3-319 and or 13-3405," Ariz. Admin. Code § R3-4- 1014(D) (emphasis added). The application of the state's definition of marihuana and drug-trafficking statutes to hemp plants is not a theoretical possibility.

Another recent Arizona statute makes clear that unlicensed hemp activities remain crimes under § 13-3405, by providing that an authorized official who transports cannabis plants collected for testing purposes under the state's 2019 pilot program does not violate § 13-3405. See Ariz. Rev. Stat. § 3-316(C) ("Notwithstanding § 13-3405, the director or the director's designee may possess and transport samples of cannabis sativa L. collected for testing to determine delta- 9 tetrahydrocannabinol concentration for eligibility as industrial hemp.") (emphasis added). The state's application of § 13-3401(19) and § 13-3405 to low-THC hemp plants is evident.

Although these 2019 statues and regulations were not in effect at the time of Brown's state convictions, each reflects that Arizona law continues to punish hemp as marihuana under § 13-3401, as well as the unlicensed transportation of hemp as drug-trafficking under § 13-3405. No legal imagination is required to hold that a realistic probability exists that the state will apply its statute in an overbroad manner. *See Grisel*, 488 F.3d at 850.

Second, a defendant may also show "a realistic probability" that a state's statute exceeds the generic definition by pointing "to at least one case in which the state courts applied the statute" in an overbroad manner. *Lopez-Aguilar*, 948 F.3d at 1147. Arizona judicial opinions show that the state punishes offenses involving "marijuana" as defined in § 13-3401 without regard to THC concentration. *Harris*, 322 P.3d at 160, 164 (holding that "marijuana users" violate a statute that prohibits driving a vehicle with "any drug defined in § 13-3401 . . . in the person's body" if they have "any amount of THC" in the body) (emphasis added); *State v. Chacon*, No. 2 CA-CR 2014-0150, 2015 WL 3536584, at *4 (Ariz. Ct. App. May 28, 2015) (unpublished) (rejecting an argument that "an insignificant, trace amount of THC" cannot support a conviction under the same DUI statute; the conviction "could be based on the presence of THC, regardless of the amount"). The state's court thus apply § 13-3401 in a way that exceeds the generic definition.

Therefore, the Arizona marihuana statute in effect during Brown's state marihuana offenses is categorically overbroad and, further, because the factfinder did not have to find the THC concentration, it is also indivisible.

//

14

## CONCLUSION

It is inherently unfair to rely on prior marihuana convictions that are almost 20 years old to drastically enhance the sentencing recommendation for this case.[1] Furthermore, these prior convictions are not "controlled substance offenses" under the present Guideline provisions, and should not be used to classify Mr. Brown as a "career offender"

Respectfully submitted,

DATED: May 25, 2020         By: */s/ Humberto Diaz*
                                                      HUMBERTO DIAZ

---

[1] As previously noted, not only are these prior convictions almost 20 years old, but these convictions have now been expunged and set aside.

15