1 LAW OFFICES OF HUMBERTO DIAZ
2 HUMBERTO DIAZ (No 157692)
  (E-mail: JHDiazLaw@gmail.com)
3 714 West Olympic Blvd., Suite 450
4 Los Angeles, CA   90015
  Telephone (213) 745-7477
5 Facsimile (213) 745-7447

Attorneys for Defendant
GASTON BROWN

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>GASTON BROWN,<br><br>　　　　Defendant. | NO. CR-17-0047-CAS-1<br><br>DEFENDANT'S ADDITIONAL SENTENCING FILING RE: DEFENDANT'S MEDICAL CONDITION; EXHIBITS |

　　　Defendant Gaston Brown, through counsel, hereby files the present supplemental filing regarding Mr. Brown's medical condition.

　　　Despite repeated efforts by counsel, no real "report" was produced by the treating oncologist and medical personnel. All that was received with the help of the USMS were Mr. Brown's medical records.

　　　The medical records received clearly indicate that Mr. Brown is still not receiving proper medical treatment, rather what we have is essentially a continuation of the poor medical treatment that almost killed defendant. And while he was finally able to get surgery and had portions of his small

intestine and his pancreas removed from his body, along with cancerous tumors, defendant's medical attention continues to be grossly neglected to this day.

The defense requests that the Court take into consideration Mr. Brown's present medical condition, the circumstances related to the inexcusable delay in receiving treatment while in federal custody as well as the on-going lack of proper medical care as relevant factors in determining the appropriate sentence in this case.

Respectfully submitted,

DATED:  April 27, 2022        By: */s/ Humberto Diaz*
                                  HUMBERTO DIAZ

# MR. BROWN'S DELAYED MEDICAL ATTENTION

Mr. Brown was arrested by federal authorities on April 16, 2016 and has been in federal custody continuously since that time. Shortly after his arrest, Mr. Brown suffered a heart attack and it was at that time that he was also diagnosed with a "carcinoid tumor", while in federal custody, on April 25, 2016.

As previously noted, it is beyond question that the delay from the BOP in providing medical attention was inexcusable. Not only was the BOP responsible for the delay in treatment, the Government also opposed defendant's repeated pleas for urgently needed medical care.

It turned out that Mr. Brown was most seriously ill. He had cancerous tumors in his stomach and lower intestines and needed surgery, and it is also without dispute ow that these cancer tumors had been diagnosed well over one year ago, when he had a heart attack while in the custody of the BOP.

This delay in getting much needed medical treatment was so long that by the time Mr. Brown got to get medical attention, the cancer was so advanced and spread out that BOP personnel declined to intervene. It took the Court's assistance for Mr. Brown to be able to get a 'second opinion' and it was only in mid-October 2017, that Mr. Brown was approved for surgery, at a different hospital, essentially 'at his own risk'.

At the last hearing, the Court requested a medical report from the treating physicians and oncologist to assess defendant's medical condition prior to completing the sentencing hearing. However, despite repeated

requests and delays, the only materials that were obtained through the USMS were Mr. Brown's medical records. Not even with the help of the Assistant United States Attorney could the parties obtain a medical report. As part of the 1,400 pages of medical records received, the notes by the oncologist were the only materials received that can be considered a report. These are attached as Exhibit A.

The medical records received clearly indicate that Mr. Brown continues to receive a most inadequate medical attention, in spite of his sensitive medical condition. Based on the medical records received, the defense was able to obtain an assessment of Mr. Brown's medical condition. *See* Exhibit B, medical report; Exhibit C, resumes of evaluating physicians. The following summarizes Mr. Brown's present condition.

### A. Mr. Brown's Personal Situation

As this Court was made aware, Mr. Brown was diagnosed with carcinoid tumor by transabdominal biopsy in 2017. A Whipple procedure was performed, and pathology showed 5 of 18 lymph nodes were metastatic. Since 2017, Mr. Brown's has since been diagnosed and treated for the following:

- He is diagnosed as suffering from severe hypertension
- He is diagnosed with liver inflammation
- He is diagnosed with hyperlipidemia (elevated cholesterol); and
- Evaluated creatinine accounts (possible Chronic Kidney Disease III)

//

### B. BOP's Treatment of Mr. Brown's Health Problems.

As noted above, Mr. Brown suffers from hypertension, hyperlipidemia, liver inflammation and evaluated creatinine counts, which point to chronic kidney disease. He also needs ongoing treatment and evaluation for carcinogen tumors. In the Santa Ana penal system, prions personal schedules all medical appointments and procedures; a prisoner literally has no control over whether he is examined by a physician or other medical personal.

### 1. BOP On-Going Medical Neglect

Mr. Brown has not seen a primary physician in three (3) years. His medical records do not support any evidence of physician oversight or clinical management. (*See* Exhibit B). On April 16, 2022, Mr. Brown was seen by the BOP's Nurse Practitioner stationed at Santa Ana and informed they could not manage his healthcare concerns and was told his oncologist is responsible for managing all health-related matters. This does not follow the medical guidance and indicates a grave lapse of medical care. An oncologist only oversees the cancer related matters of a patient. Additionally, as of April 20, 2022, BOP has not fulfilled the Court's mandate for a full medical evaluation of Mr. Brown.

Given the lack of BOP's unwillingness or inability to provide a detailed account of Mr. Brown's medical stance, he procured, with the assistance of his family, a medical and legal expert to review the thousand-plus pages of medical records to provide this Court with a high-level, yet detailed, overview of his current medical condition.

5

### 2. Lack of Proper Medical Care Despite Repeated Requests

Mr. Brown's continuous complaints of constipation are not treated with the appropriate measure of concern for a post-operative Whipple patient. (*See* Exhibit B).

- Mr. Brown's rapid hypertension elevation is pacified with added medication, and lack of monitoring, which over time has led to significant reduced heart rate, and the uncontrolled blood pressure has subjected Mr. Brown to suspected chronic kidney failure. (*See* Exhibit B).
- Mr. Brown's is experiencing and increase in his 5-HIAA levels (139µmol/day as of 11/19/2021), an acid waste product from the breakdown of serotonin by the liver, is increasing.

### 3. Chronic Kidney Disease III and Cancer

With Chronic Kidney Disease III, the damage to the kidney blocks the kidneys' ability to filter waste and fluid in the blood. The waste build-up, uremia, will begin to harm other areas, such as to cause high blood pressure, anemia, and bone damage.[1] As Mr. Brown's Glomerular Filtration Rate (GFR), which is the kidney's ability to filter toxins or waste from the blood, decreases his risk factor for cancer increases.[2]

//

---

[1] www.kidneyfund.org

[2] https://www.ncbi.nlm.nih.gov; Journal of the American Society of Nephrology

### *5-Hydroxyindoleacetic Acid (5-HIAA)*

Serotonin is a hormone that is broken down the liver. Higher levels of 5-HIAA in one's liver is a probable indication of a carcinoid tumor. These tumors secrete serotonin. With more serotonin in the body, more is broken down. Most carcinoid tumors start in the bowl, which Mr. Brown experienced in 2017. Over two years, Mr. Brown has consistently experienced diarrhea and abdominal cramps, irregular heartbeat, which have gone unchecked for an extensive period, *see* Exhibit B, and are indicative of symptoms and signs of reoccurring carcinoid tumors. Mr. Brown's elevated serotonin level is 139μmol/day. Values greater than 25mg/24 or greater than 131μmold/day indicate large carcinoid tumors.[3]

These and other current medical conditions, highlighted in Exhibit B, show a gross lack of neglect by Santa Ana's and an egregious disregard of their fiduciary duty for the welfare of Mr. Brown.

### C. Mr. Brown's High-Risk Factors

Mr. Brown is suffering from medical high-risk factors that have been allowed to rapidly deteriorate because of the wanton disregard of medical staff personnel to provide the special attention and care needed, and lack of management of follow-up appointments. His diseases are masked with additional medications that are not properly monitored and have led to other debilitating problems. This Court never intended its imprisonment to practically result in a death sentence. However, the continuous disregard to

---

[3] https://emedicine.medscape.com/article/2089202-overview

Mr. Brown's current health conditions signals a significant likelihood of death as his physical wellbeing is resulting in severe and potentially unrepairable illness.

Mr. Brown has spent 7 years confined and never contemplated the extreme medical danger that he has faced and continues to face during his confinement. Mr. Brown has worked to address the factors that led to prosecution and is demonstrating a willingness to put this episode behind him. Mr. Brown is burdened with grave and serious health risks, but has demonstrated, and will continue to prove, that he is making amends and contribute to his community in a productive. This assumes, of course, he is healthy enough or alive to do so.

Mr. Brown is very glad to still be alive and is most grateful for the Court's assistance regarding his medical care. But he remains gravely at risk, may not survive recuperation from the surgery--and certainly his chances of further complications or acquiring an infection or injury while housed at the BOP are greatly increased. The defense submits that the Court can take these facts into consideration as sentencing factors.

### B. LEGAL STANDARDS

As previously noted, given the background of this case and the serious nature of the medical issues affecting Mr. Brown, including the delay in surgery, the surgery itself, not to mention the near-death condition while incarcerated that resulted from his delay in treatment, as well as his expected reduction is life-span, a substantial reduction from the calculated sentencing guideline range is appropriate.

Indeed, pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) as amended by the First Step Act of 2018, § 608 (b)(1), Pub. L. 115-391, 132 Stat. 5194, 5239 (2018) and United States Sentencing Guidelines, §1B1.13, the Court has even has the power to grant defendant's immediate compassionate release from Santa Ana Jail, under the guidance of the Bureau of Prisons and reform his judgment to a time-served sentence or home detention for a specified time period.

And even a sentence to time served with a condition of home confinement need not be considered a radical remedy. The Sentencing Commission has issued a policy statement addressing the reduction of sentences under § 3582(c)(1)(A). As relevant here, the policy statement provides that a court may reduce the term of imprisonment after considering the § 3553(a) factors if the Court finds that (I) "extraordinary and compelling reasons warrant the reduction;" (ii) "the defendant is not a danger to the safety of any other person or the community, as provided in 18 U.S.C. § 3142(g);" and (iii) "the reduction is consistent with this policy statement." USSG § 1B1.13.2.

As previously noted, in the recent context of compassionate release litigation, District Courts have exercised discretion and are taking into consideration defendant's medical condition, lack of care received and delay in receiving medical care. For example, in *United States v. Beck*, U.S.D.C. (M.D. N.C.), the district judge stated she had granted compassionate release due to defendant's "invasive cancer and the abysmal health care [that the] Bureau of Prisons has provided," which qualified "as 'extraordinary and compelling reasons' warranting a reduction in her

sentence to time served." *See United States v. Beck*, U.S.D.C. (M.D. N.C.), Case No. 1:13-cr-00186-6-CCE; 2019 U.S. Dist. LEXIS 108542.

## CONCLUSION

Inadequate medical care while in custody almost killed defendant. Mr. Brown is alive but for the grace of God and with the Court's help. Even post-surgery, the lack of proper medical care continues. The Court can take into consideration Mr. Brown's present medical condition, the BOP's inexcusable delay in providing adequate treatment that contributed to the present medical condition, as well as the on-going lack of proper medical treatment following surgery.

The Court need not impose the sentence recommended by the Government, which would be effectively a life sentence for Mr. Brown. The defense respectfully recommends the following sentence as appropriate in this case:

- **10 years** on the drug charges (Counts One and Two)
- **2 years consecutive** on the fraud charges (Counts Three, Four and Five)
- **Four years departure** based on a combination of factors: medical condition; delay in receiving medical treatment; post-conviction rehabilitation efforts; safety valve applicability.

This would result in a total sentence of **eight years**, a sentence that would be appropriate for this defendant given the facts of the case and Mr. Brown's post-conviction rehabilitation efforts and a sentence that would

1 | also take into consideration defendant's unique medical problems that
2 | resulted from the inexcusable delay in this defendant receiving proper
3 | medical treatment while in federal custody as well as the disregard by the
4 | USMS and the BOP for defendant's present medical condition.

Respectfully submitted,

DATED: April 27, 2022        By: /s/ Humberto Diaz
                                 HUMBERTO DIAZ